Dennis Allen BROWN,
Petitioner-Appellant,

v.

Charles L. WOLFF, and Richard H. Bryan, Attorney-General of the State of Nevada, Respondents-Appellees.

No. 80–4447.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 14, 1982.

Decided April 21, 1983.

dence of these three steamship lines as that of Trans Pacific.

Sara B. Brown, Lawrence J. Semenza, Las Vegas, Nev., for petitioner-appellant.

Bruce Laxalt, Reno, Nev., for respondents-appellees.

Before SKOPIL and FLETCHER, Circuit Judges, and SCHWARTZ,* District Judge.

FLETCHER, Circuit Judge:

Dennis Brown, a Nevada state prisoner, appeals the dismissal of his habeas petition claiming a violation of the Interstate Agreement on Detainers (IAD), to which Nevada is a party. Brown contends that he was not tried within 180 days of his request for trial. The State argues that Brown's conviction is valid under the IAD because Brown waived his IAD speedy trial rights. We have jurisdiction under 28 U.S.C. § 2253 (1976) and affirm.

I

Facts

On February 25, 1975, while Brown was incarcerated in a Maryland jail on Maryland robbery charges, the State of Nevada filed a criminal complaint charging Brown with robbery in Nevada. Both Maryland and Nevada are parties to the IAD, an interstate compact designed, *inter alia,* to enable a prisoner in one state to request the speedy disposition of criminal charges pending against him in another jurisdiction. *See* Md.Ann.Code, Art. 27, §§ 616B–616J (1965); Nev.Rev.Stat. § 178.620 (1971). Pursuant to the IAD, Nevada officials filed a detainer with the State of Maryland in June 1975. Four months later, Brown

---

* Hon. Edward J. Schwartz, United States District Judge, for the Southern District of California, sitting by designation.

pleaded guilty to the Maryland robbery and received a fifteen-year sentence.

Brown was not informed of the Nevada detainer until October 1977.[1] In January 1978, Brown completed forms requesting a trial on the Nevada charges within 180 days, pursuant to Article III(a) of the IAD.[2] On January 13, Brown gave the forms to Maryland prison officials, who mailed them on January 17. Nevada authorities received the forms on January 20, three days after they had been mailed.[3]

Under the IAD procedures, Maryland transported Brown to Nevada on April 25, 1978. At Brown's arraignment hearing in Nevada, trial was set for July 24, 1978, a date 192 days after Brown had given the forms to Maryland officials, 188 days after the forms were mailed, and 185 days after the Nevada authorities received the forms. At the arraignment neither Brown nor his counsel objected to the July 24 trial date.

On June 7, 1978, Brown filed a petition for a pre-trial writ of habeas corpus in state court. He stipulated that if his habeas petition were not decided by 15 days before the July 24 trial date, the court could continue the trial. At the hearing on the petition, Brown alleged that the State had violated both his speedy trial right under the IAD by not trying him within 180 days and his constitutional speedy trial right by not trying him within three years.[4] The Nevada court denied the writ on August 7, 1978, holding that there were exceptional circumstances that made the 180-day rule inapplicable. On appeal, the Nevada Supreme Court affirmed, holding that because Brown had never requested trial under Article III, no IAD violation occurred.[5] Brown was then tried and sentenced.

Brown next petitioned for habeas relief in federal district court, contending that the indictment should be dismissed because the state did not try him within 180 days and because his constitutional speedy trial right was violated. The State argued that the trial was timely under Article III and that in any event Brown had suffered no prejudice from a "mere technical violation." The district court denied the petition because the IAD violations did not result "in a fundamental defect which inherently results in a complete miscarriage of justice," citing *Hitchcock v. United States,* 580 F.2d 964, 966 (9th Cir.1978). The district court also found no constitutional speedy trial violation.

## II

### Speedy Trial Under the IAD

■ A person in state custody may apply in federal court for a writ of habeas corpus

1. Art. III(c) of the IAD provides that:
   The warden, commissioner of corrections, or other official having custody of the prisoner shall promptly inform him of the source and contents of any detainer lodged against him and shall also inform him of his right to make a request for final disposition of the indictment, information, or complaint on which the detainer is based.

2. Art. III(a) of the IAD states in relevant part:
   Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party State, and whenever during the continuance of the term of imprisonment there is pending in any other party State any untried indictment, information, or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred and eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his

   imprisonment and his request for a final disposition to be made of the indictment, information, or complaint: *Provided,* That, for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance.

3. The State has conceded that it received actual notice on January 20, 1978.

4. Brown's petition raised issues other than those discussed at the state court hearings. At the initial hearing Brown dropped his claim concerning identification evidence, and he concentrated on the IAD violation, though the IAD had never specifically been mentioned in the petition.

5. The record reveals this finding to be clearly erroneous. Indeed, the State has consistently conceded that it had actual notice as early as January 20.

"only on the ground that he is in custody in violation of the constitution or laws ... of the United States." 28 U.S.C. § 2254(a) (1976). The IAD is an interstate compact approved by Congress and is thus a federal law within the meaning of § 2254. *Cf. Cuyler v. Adams,* 449 U.S. 433, 438, 101 S.Ct. 703, 706, 66 L.Ed.2d 641 (1981) (IAD violation is violation of federal law for purposes of 42 U.S.C. § 1983). Accordingly, the district court had jurisdiction to decide whether Brown was being held in violation of the IAD.

Article III of the IAD allows a prisoner to initiate proceedings for transfer to another jurisdiction for trial. The warden must notify the prisoner of all outstanding detainers and inform him of his right to request a final disposition of the underlying charges. If a prisoner demands disposition, he must be transferred and brought to trial within 180 days or the charges will be dismissed with prejudice, unless good cause can be shown. Arts. III(a), V(c); *Cuyler,* 449 U.S. at 444, 101 S.Ct. at 709 (dictum); *cf. United States v. Mauro,* 436 U.S. 340, 364–65, 98 S.Ct. 1834, 1849–50, 56 L.Ed.2d 329 (1978) (indictment dismissed because prisoner not tried within applicable time period).

Brown contends that his indictment must be dismissed because he was not tried within 180 days of his request. The State argues that no dismissal is required because: (a) any violation was a mere technicality not justifying dismissal; (b) Brown has shown no prejudice by the delay; (c) the state court extended the period for good cause because the court calendar was too congested to permit a trial within the 180 day period; and (d) Brown waived his right to trial within 180 days. We examine each of these arguments in turn.

*A. Technical Error.*

■ The State argues first that we need not determine whether any IAD violation in fact occurred, because any violation was not a "fundamental defect" or an "exceptional circumstance" that justifies habeas corpus relief. *See Davis v. United States,* 417 U.S. 333, 346, 94 S.Ct. 2298, 2305, 41 L.Ed.2d 109 (1974). Relying on *Hitchcock v. United States,* 580 F.2d 964, 966 (9th Cir.1978), where we stated that a violation of the anti-shuttling provision [6] of the IAD did not give rise to habeas corpus relief, the State argues that violations of the IAD are merely technical errors that do not warrant habeas relief. We disagree.

The primary purpose of the IAD is to "encourage the *expeditious* and orderly disposition of [outstanding criminal] charges." IAD, Art. I (emphasis added); *see United States v. Mauro,* 436 U.S. 340, 359–60, 98 S.Ct. 1834, 1846–47, 56 L.Ed.2d 329 (1978). The Agreement requires dismissal of the indictment where trial is not held within the 180-day time period of Article III. IAD, Art. V(c). Accordingly, the Supreme Court has held that dismissal is required where the federal government fails to try a prisoner within the IAD speedy trial limits. *Mauro,* 436 U.S. at 364–65, 98 S.Ct. at 1849–50; *Cuyler,* 449 U.S. at 444, 101 S.Ct. at 709 (dictum).

In light of the central policy of the IAD—a speedy resolution of outstanding criminal charges—and the sanction of mandatory dismissal where that policy is thwarted by delay, we have little difficulty concluding that a prisoner who has been tried in violation of the timely trial provisions presents an "exceptional circumstance" that requires section 2254 relief. *See Cody v. Morris,* 623 F.2d 101, 102–03 (9th Cir.1980) (holding that violation of IAD timely trial provision requires § 2254 relief).

Our opinion in *Hitchcock v. United States,* 580 F.2d 964 (9th Cir.1978), relied on

---

**6.** The alleged violation in *Hitchcock* involved the anti-shuttling provision, IAD, Art. IV(e), which states:

> If trial is not had on any indictment, information, or complaint contemplated hereby prior to the prisoner's being returned to the original place of imprisonment pursuant to article V(e) hereof, such indictment, information, or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice.

by the State, does not compel a contrary result. As was explained in *Cody,* the writ of habeas corpus *ad prosequendum* issued by the receiving state in *Hitchcock* was not a "detainer" under the IAD. *Cody,* 623 F.2d at 103 (citing *Mauro,* 436 U.S. at 361, 98 S.Ct. at 1847). Thus, "the petitioner in that case did not allege any violation of federal law at all." *Cody,* 623 F.2d at 103. In any event the alleged violation in *Hitchcock* was quite different, involving the improper return of the prisoner to the sending state before trial in the receiving state. It did not involve the denial of "significant protections relating to such matters as the *timing* and [defendants'] notice of various proceedings against them," protections which implement the purpose of the IAD. *See Hitchcock,* 580 F.2d at 966 (emphasis added). The violation in *Hitchcock* simply failed to "rise to the required level of seriousness" for habeas corpus relief. *Id.* The *Hitchcock* court expressly limited its holding to "the facts of this case," *id.,* and nowhere stated, let alone held, that a violation denying "significant protections" would not justify habeas relief.

### B. Absence of Prejudice.

■ The State next contends that even if a violation of the IAD speedy trial provisions requires dismissal of the indictment, we should not grant relief here because the defendant has not demonstrated any prejudice arising from the delay of his trial. We disagree. The Agreement states that a "court ... *shall* enter an order dismissing the [indictment] with prejudice" for failure to try a prisoner within the specified time. IAD, Art. V(c) (emphasis added). Moreover, the Supreme Court has enforced its literal terms. *Mauro,* 436 U.S. at 353, 364–

65, 98 S.Ct. at 1843, 1849–50; *Cuyler,* 449 U.S. at 444, 101 S.Ct. at 709. An additional requirement of prejudice is found neither in the agreement nor in its interpretations. *See Mauro,* 436 U.S. at 364–65, 98 S.Ct. at 1849–50 (dismissal for violation of timely trial provision granted without examining whether defendant was prejudiced by delay); *Cody,* 623 F.2d at 103 (same).

### C. Good Cause.

■ The State further contends that court congestion constitutes good cause for extending the 180-day period for trial and thus, no IAD violation occurred. We conclude that court congestion may in some circumstances constitute good cause for continuance under the IAD, but the requisite level of court congestion was not shown here.

The IAD does not by its own terms define good cause. Nor do the various legislative histories of the original drafting of the IAD by the Joint Committee on Detainers [7] and the adoption of the IAD by the States and by Congress shed any light on whether congestion is good cause.

■ Because the IAD, unlike the Speedy Trial Act, does not specifically exclude court congestion as a valid ground for extending pre-trial time periods, the courts have been reluctant to hold that a congested trial calendar is not good cause for extension. However, where the trial judge has not attempted to transfer the case to another judge or to adjust or increase the criminal calendar, the weight of authority supports the view that the court is not sufficiently congested to constitute good cause for extension. Accordingly, the indictment should be dismissed.[8]

---

**7.** The Committee included representatives from the Parole and Probation Compact Administrator's Association, the National Association of Attorneys General, the National Conference of Commissioners on Uniform State Laws, the American Prison Association, and the Section on Criminal Law of the American Bar Association.

**8.** *Compare Commonwealth v. Carrillo,* 5 Mass. App. 812, 813, 361 N.E.2d 415, 416 (1977) (congestion held good cause where "necessary and

reasonable in light of scheduling difficulties") *with United States v. Ford,* 550 F.2d 732, 743 (2d Cir.1977) (congestion held not good cause where no attempt was made to transfer case to another judge or to increase criminal trial calendar), *aff'd sub nom. United States v. Mauro,* 436 U.S. 340, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978) *and State ex rel. Hammett v. McKenzie,* 596 S.W.2d 53, 58 (Mo.Ct.App.1980) (en banc) ("crowded docket" held not good cause be-

In this case, the State made no effort to try the case despite the claimed congestion. The state trial judge merely remarked at the arraignment:

"All right. Not guilty. Okay. The first court date available on the court calendar would be past 60 days slightly. We will set the matter, because of the court calendar, on July 24th. Thank you. That is all."

Significantly, the state judge at the habeas hearing questioned whether the circumstances justified a continuance based on congestion. Thus, we conclude that no continuance for good cause took place.

### D. Waiver.

The State argues that even if the court congestion here does not constitute good cause for extending the 180-day period, Brown waived his right to a speedy trial under the IAD by not objecting at the hearing when the trial date was set and by agreeing to continuances.

■ A waiver is not ordinarily found from mere silence. The Agreement puts no affirmative obligation on the prisoner to alert the court of his IAD rights. We think it inappropriate to impose such an obligation.

■ A prisoner may waive his IAD rights, however, if he affirmatively requests to be treated in a manner contrary to the procedures prescribed by the IAD.

cause civil cases should be continued so that IAD cases are timely).

9. Brown argues that the 180 days began to run when he delivered his request to the Maryland authorities on January 13. Art. III(a) of the IAD provides that a prisoner

shall be brought to trial within one hundred and eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court ... written notice ... and request for a final disposition ....

Jurisdictions are divided on whether the date prisoner "shall have caused to be delivered" is: (a) the date on which the defendant requests the warden of the institution in which he is confined to forward the necessary papers, *Beebe v. State,* 346 A.2d 169, 171 (Del.1975); (b) the date on which the papers are mailed, *State v. Wood,* 241 N.W.2d 8, 11–13 (Iowa

*See United States v. Black,* 609 F.2d 1330, 1334 (9th Cir.1979). In this case, by explicitly agreeing to a continuance of trial before the 180-day period had run and then agreeing to a further continuance up to the date of his trial on November 13, Brown acted contrary to the speedy trial provisions of the IAD. When Brown filed his habeas petition on June 7, 1978, he stipulated that the trial could be continued if the petition were not decided by July 10. The habeas petition was not decided until August 7, 1978. At that point Brown agreed to a further continuance of trial until November 13, 1978, while he appealed the denial of his petition to the State Supreme Court. Brown was tried on November 13. When we exclude from the computation the period covered by the continuances (July 10 through November 13), we find Brown was tried within 180 days of his request.[9] Under these circumstances we find no IAD violation. *See State v. Carlson,* 258 N.W.2d 253, 259 (N.D.1977) (stipulation or agreement between prosecutor and defendant constitutes waiver of 180-day period); *State ex rel. Hammett v. McKenzie,* 596 S.W.2d 53, 57–58 (Mo.Ct.App.1980) (same) (dictum).[10]

### III
### Constitutional Rights to a Speedy Trial

■ We find no merit in Brown's sixth amendment claim. *See Barker v. Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972).

1976); or (c) the date on which the receiving state receives the request, *Commonwealth v. Fisher,* 451 Pa. 102, 104–05, 301 A.2d 605, 608 (1973). We need not decide this issue because under any proposed date the trial took place within 180 days, excluding the period of the continuances.

10. Because we conclude that defendant's explicit stipulations to continuances constitute a waiver of his IAD timely trial rights, we need not address the question whether mere pre-trial maneuvering by the defendant, *e.g.,* filing a writ of habeas corpus, requesting severance, or moving for an investigation, without more, constitutes such a waiver. *See State ex rel. Hammett v. McKenzie,* 596 S.W.2d 53, 57–58 (Mo. Ct.App.1980) (citing cases rejecting treatment of such actions as waivers of time period allowed for prosecution under IAD).

The judgment of the district court is affirmed.