Lamont HUDSON, Plaintiff-Appellant,

v.

John MORAN, Sheriff, Clark County, Nevada; Brian McKay, Attorney General, State of Nevada, Defendants-Appellees.

No. 84–1886.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 14, 1985.

Decided May 17, 1985.

Cal J. Potter, Las Vegas, Nev., for plaintiff-appellant.

Johnnie B. Rawlinson, Las Vegas, Nev., for defendants-appellees.

Before DUNIWAY, FARRIS and BEEZER, Circuit Judges.

BEEZER, Circuit Judge:

Appellant, a state prisoner, appeals the district court's order denying his petition for writ of habeas corpus. Appellant challenges his extradition from California to Nevada and contends that Nevada officials are holding him in violation of Nevada law. We affirm.

## FACTS

On April 24, 1980, appellant Lamont Hudson ("Hudson") was arrested in Nevada for possession and sale of a controlled substance. A criminal complaint was filed on May 2, 1980, and Hudson was held to answer on July 8. He entered a plea of not guilty, and continued on bail pending trial on October 13. He failed to appear for calendar call on October 8. A new trial date of December 8, 1980 was set but subsequently vacated when Hudson's attorney withdrew.

Trial dates in February and May 1981 were vacated because of Hudson's incarceration in California for another felony conviction. On August 26, 1981, a Nevada bench warrant was issued for Hudson's arrest.

On October 1, 1981, the Clark County District Attorney sent a request for temporary custody to the California Correctional Center at Susanville. On January 28, 1982, the California Correctional Center offered to deliver temporary custody of Hudson. Hudson filed a petition for writ of habeas corpus in California Superior Court, challenging his extradition to Nevada. The California court denied the motion on May 21, and Hudson was transported to Nevada to stand trial on May 28, 1982.

On February 7, 1983, Hudson filed a motion to dismiss the information in Nevada District Court. The Nevada court denied the motion on March 4, 1983. Hudson subsequently appealed to the Nevada Supreme Court. His petition was denied on August 25, 1983.

On September 20, 1983, Hudson filed a petition for writ of habeas corpus in the United States District Court, District of Nevada, pursuant to 28 U.S.C. § 2254. Hudson then entered a plea of guilty on September 30, 1983, in the Nevada court and was subsequently sentenced to seven years in the Nevada State Prison. On January 23, 1984, the district court denied the petition for habeas corpus. Hudson filed a timely notice of appeal.

Hudson applied for a Certificate of Probable Cause under 28 U.S.C. § 2253. The district court denied the application on March 23, 1984, but this court granted the application on April 24, 1984.

Hudson urges us to grant him relief on the grounds that he was not brought to trial in a timely manner, and that Nevada's failure to obtain the endorsement of its governor invalidated the detainer. The Nevada officials argue that Nevada's Extradition Act does not apply to extraditions conducted under the Interstate Agreement on Detainers, and that Hudson's guilty plea precludes him from challenging his extradition.

## ANALYSIS

This court reviews a petition for writ of habeas corpus *de novo. See Roth v. United States Parole Commission*, 724 F.2d 836, 839 (9th Cir.1984).

### I

*The Extradition Act Applies to Extraditions Conducted Under the Interstate Agreement*

Hudson was extradited under the Interstate Agreement on Detainers ["Interstate

Agreement"], 18 U.S.C. app. III, codified in Nevada at Nev.Rev.Stat. § 178.620, *et seq.* The Interstate Agreement and the Uniform Criminal Extradition Act ["Extradition Act"] both establish procedures for the transfer of a prisoner in one jurisdiction to the temporary custody of another jurisdiction. *Cuyler v. Adams*, 449 U.S. 433, 443, 101 S.Ct. 703, 709, 66 L.Ed.2d 641 (1981). The Interstate Agreement is an interstate compact approved by Congress. Its interpretation therefore presents a question of federal law. *Id.* at 442, 101 S.Ct. at 708; *see also Brown v. Wolff*, 706 F.2d 902, 905 (9th Cir.1983).

The Extradition Act contains more specific procedural safeguards than the Interstate Agreement. It has been incorporated into the state laws of the 48 states which have adopted it and is codified in Nevada at Nev.Rev.Stat. § 179.177, *et seq.*

The United States Supreme Court held in *Cuyler* that the Interstate Agreement preserves a prisoner's procedural safeguards existing under state or federal law, except those expressly withheld by the Agreement itself. *Cuyler v. Adams*, 449 U.S. at 450, 101 S.Ct. at 712.

The Nevada officials assert that because Nevada requested Hudson's extradition under the Interstate Agreement, it was not required to comply with the technical provisions of the Nevada Extradition Act. This argument lacks merit.

## II

*The Nevada Officials' Failure to Obtain the Governor's Endorsement Invalidated the Detainer*

▪ Nev.Rev.Stat. § 178.620, Art. IV(d) specifically dispenses with section 179.183's requirement that the governor of the *sending* state approve the requested detainer. In *Housewright v. Lefrak*, Nev., 669 P.2d 711 (1983), however, the Nevada Supreme Court clearly established which detainer procedures require executive approval by the *demanding* state.

In *Housewright*, the court defined a "detainer" as an "informal notice of charges pending in another jurisdiction, ... not a request that the state in which the prisoner is incarcerated ... transfer the prisoner." *Housewright*, 669 P.2d at 713. Therefore, a detainer may be filed by a district attorney without approval of the demanding state's governor. When a state officially requests another state to act on a detainer by filing a request for temporary custody to obtain involuntary transfer of a prisoner under Article IV, however, the demanding state's governor *must* approve the request "as a procedural safeguard attendant to extradition proceedings retained by the Agreement on Detainers." *Id.*

On October 1, 1981, the Clark County District Attorney issued a request for temporary custody under Nev.Rev.Stat. § 178.-620, Art. IV(d). However, there is no indication in the record, nor do the Nevada officials claim, that the Governor of Nevada ever approved the request as required by Nev.Rev.Stat. § 179.223. In pertinent part, the statute says:

1. When the return to this state of a person charged with crime in this state is required, the district attorney *shall* present *to the governor* his written application for a requisition for the return of the person charged....

3. ... One copy of the application, *with the action of the governor indicated by endorsement* thereon ... shall be filed in the office of secretary of state.... The other copies shall be forwarded *with the governor's requisition.* [Emphasis added.]

Because the Clark County District Attorney did not seek or obtain the governor's approval, the detainer procedure used to secure Hudson's extradition was invalid. However, we cannot agree with Hudson that the detainer's invalidity alone is sufficient ground for granting habeas relief in this case.

## III

*Hudson's Guilty Plea Precludes Him From Seeking Habeas Corpus Relief*

▪ As a general rule, one who voluntarily and intelligently pleads guilty to a

criminal charge may not subsequently seek federal habeas corpus relief on the basis of pre-plea constitutional violations. *Haring v. Prosise,* 462 U.S. 306, 319–20, 103 S.Ct. 2368, 2376, 76 L.Ed.2d 595 (1983); *Tollett v. Henderson,* 411 U.S. 258, 266, 267, 93 S.Ct. 1602, 1607, 1608, 36 L.Ed.2d 235 (1973); *Mitchell v. Superior Court,* 632 F.2d 767, 769 (9th Cir.1980), *cert. denied,* 451 U.S. 940, 101 S.Ct. 2021, 68 L.Ed.2d 327 (1981). A defendant may only attack the "voluntary and intelligent character of the guilty plea," *Tollett,* 411 U.S. at 267, 93 S.Ct. at 1608, by showing that the advice he received from counsel was not "within the range of competence demanded of attorneys in criminal cases." *McMann v. Richardson,* 397 U.S. 759, 771, 90 S.Ct. 1441, 1449, 25 L.Ed.2d 763 (1970).

■ Hudson concedes that he entered a guilty plea upon advice of counsel. However, he contends that because he was not informed that such a plea would foreclose subsequent habeas relief, he should now be allowed to challenge the extradition proceedings.

Hudson has not alleged, nor does the record indicate, that the advice from Hudson's attorney was not within the range of competence demanded of attorneys in criminal cases. Therefore, his guilty plea precludes habeas relief.

■ Hudson also relies on *Blackledge v. Perry,* 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974) to support his habeas petition. *Blackledge* is easily distinguishable from the matter before us. In *Blackledge,* the government brought a felony charge in alleged retaliation for a defendant's exercise of his statutory right to a trial *de novo* on his misdemeanor conviction. The Supreme Court held that the "very initiation of the proceedings against [the defendant] operated to deny him due process of law." *Blackledge,* 417 U.S. at 30, 31, 94 S.Ct. at 2103, 2104. The defendant's due process claim invalidated the very charge on which he was being held.

By contrast, Hudson's attack on his extradition does not support a claim that his Nevada conviction was improperly rendered. Thus, *Blackledge* does not entitle Hudson to habeas relief.

## IV

### *Hudson Is Barred From Raising A Speedy Trial Claim*

■ It is well settled that when a defendant's dilatory tactics prevent trial from commencing within the statutory period, the state will not be charged with responsibility for the delay. *Brinkman v. State,* 95 Nev. 220, 592 P.2d 163, 165 (1979); *Hardison v. State,* 93 Nev. 551, 571 P.2d 107, 108 (1977).

Nev.Rev.Stat. § 178.620, Art. IV(c) requires trial to begin within 120 days of the prisoner's arrival in the receiving state; however, the trial court may grant continuances for good cause. If the defendant is not tried within that period, the charges will be dismissed with prejudice, absent good cause shown. Nev.Rev.Stat. § 178.620, Art. IV(c).

■ Hudson was delivered to Nevada on May 28, 1982. He filed his motion to dismiss on February 7, 1983, and had then been in the custody of Nevada prison officials for 255 days, 135 more than allowed by statute.

In its points and authorities in opposition to Hudson's motion to dismiss, the Nevada officials state that Hudson "engaged in every conceivable delatory [sic] tactic imaginable to avoid going to trial.... This Court is well aware of the actions taken by the defendant." After hearing argument, the Nevada District Court denied the motion. Hudson concedes in his Emergency Petition for Writ of Prohibition the court found that any delays were due to Hudson's many requests for continuances.

The Nevada state court record is not included as part of the record on appeal; therefore, the number and nature of Hudson's pre-trial motions cannot be determined. However, Hudson never refutes the district court's finding that trial delays were due to his continuances, nor does he challenge the government's character-

ization of his motions as dilatory. Under the holdings of *Brinkman* and *Hardison, supra,* Hudson is precluded from raising a speedy trial issue.

The district court is AFFIRMED.