Donald G. JOHNSON,
Petitioner-Appellant,

v.

Alan A. STAGNER, Warden,
Respondent-Appellee.

No. 85–3530.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 5, 1985.

Decided Jan. 28, 1986.

Stephen R. Sady, Asst. Federal Public Defender, Portland, Or., for petitioner-appellant.

Jonathan Fussner, Asst. Atty. Gen., and Ann Kelley, Dept. of Justice, Salem, Or., for respondent-appellee.

Before FLETCHER and BOOCHEVER, Circuit Judges, and THOMPSON,* District Judge.

* Bruce R. Thompson, Senior United States District Judge for the District of Nevada, sitting by designation.

FLETCHER, Circuit Judge:

■ Donald G. Johnson appeals from the district court's denial of his petition for habeas corpus under 28 U.S.C. § 2254 (1982). Johnson contends that the State of Oregon's failure to bring him to trial or sentence him within 180 days after he made a proper request to be brought to trial under the Interstate Agreement on Detainers (IAD)[1] violated the IAD and required the district court to order his indictment dismissed with prejudice. Because the record indicates that over 180 days elapsed between Johnson's IAD request and his trial and sentencing, and does not clearly indicate that the State and the trial court satisfied the IAD's timing requirements, we remand Johnson's case to the district court for further fact-finding.

## FACTUAL BACKGROUND

Johnson was indicted on one count of first degree robbery by an Oregon grand jury in 1980. He failed to appear for arraignment, and a bench warrant was issued. In 1981, Johnson was arrested in California on separate robbery charges, and in December, 1981, the State of California notified Oregon that Johnson was in custody. In January, 1982, Johnson was incarcerated at Soledad State Prison in California, and he was subsequently transferred to the California Medical Facility at Vacaville.

On February 19, 1982, Johnson prepared a "Petition for a Writ of Habeas Corpus," in which he requested prompt disposition by the Oregon courts of all charges pending against him. Johnson's petition did not include a certificate of inmate status, as required under the IAD.[2] Johnson sent a copy of the petition to the Multnomah County Circuit Court, and it was received on March 2, 1982, but he never sent a copy to the Oregon prosecutor.[3] Johnson also allegedly "informed [those at] the [California] institution [where he was incarcerated] that he wanted them to do their part."

The State of Oregon lodged detainers against Johnson at Vacaville on March 22, 1982 and at Soledad on April 8, 1982. On May 7, 1982, Johnson completed a form entitled "Inmate's Notice of Place of Imprisonment and Request for Disposition of Indictments, Information or Complaints," which California prison officials sent to the Oregon authorities along with a certificate of Johnson's inmate status. Johnson was arraigned in Oregon on August 2, 1982,

1. Both Oregon, the state issuing the detainer against Johnson, and California, the state where he was incarcerated, are parties to the IAD. See Cal.Penal Code §§ 1389–1389.8 (1984); Or.Rev. Stat. § 135.775 (1984).

2. IAD Article III(a) provides that:

"Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, *he shall be brought to trial within 180 days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint: Provided, that for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance. The request of the prisoner shall be accompanied by a certificate of the appropriate official having custody of the prisoner,* stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decisions of the state parole agency relating to the prisoner."

IAD, art. III(a) (emphasis added).

3. Johnson maintains that the Oregon prosecutor's office received "actual notice" of his demand for disposition of the Oregon charges pending against him in March, 1982, since the Multnomah County court forwarded a copy of his petition to the prosecutor's office. However, this court has required prisoners seeking to invoke the IAD to comply with its precise notice requirements, rather than merely providing some alternate form of notice to the various interested parties. *See, e.g., Tinghitella v. California,* 718 F.2d 308, 312 (9th Cir.1983) (per curiam).

and his trial was scheduled for September 21, 1982.

However, Johnson's trial was continued, according to the Oregon prosecutor, "because the defendant was going to enter a plea and apparently [because there was] some difficulty getting on the docket." The record is unclear concerning the precise reasons for the continuance and the procedures by which it was granted. Apparently, Johnson had been involved in plea negotiations with a deputy district attorney who left on vacation before they reached an agreement, thereby necessitating a new set of negotiations.

■ Johnson moved to dismiss his indictment based on violation of the IAD's 180-day time limit on November 8, 1982. The state trial court denied that motion, and Johnson was found guilty of one count of first-degree burglary on December 15, 1982. The Oregon Court of Appeals affirmed Johnson's conviction without a written opinion, 64 Or.App. 634, 669 P.2d 842 (1983), and the Oregon Supreme Court denied his request for review.[4]

Johnson petitioned the district court for habeas relief based on the alleged IAD violation in April, 1984. The federal magistrate recommended dismissal of Johnson's petition and subsequently denied his motion for reconsideration. The district court adopted the magistrate's findings and recommendations, and dismissed Johnson's habeas action in December, 1984.

## ANALYSIS

We have held that if a prisoner establishes that he validly invoked the IAD, and that a state court exceeded the IAD's 180-day time limit in bringing him to trial, he is entitled to habeas relief under 28 U.S.C. § 2254. *Tinghitella v. California*, 718 F.2d 308, 310–11 (9th Cir.1983) (per curiam) (the IAD request was for sentencing in this case); *accord Brown v. Wolff*, 706 F.2d

902, 905 (9th Cir.1983); *Cody v. Morris*, 623 F.2d 101, 102–03 (9th Cir.1980).

In his appeal, Johnson raises two sets of claims under the IAD. First, he maintains that his actions in February and March, 1982—mailing a habeas petition to the Multnomah County Circuit Court and requesting California prison officials to "do their part"—were sufficient to commence the running of the IAD's 180-day clock in his case. The magistrate and district court directly addressed this claim, and rejected it on the grounds that those actions failed to satisfy the formal requirements of the IAD.

Second, Johnson maintains that even if he did not satisfy the IAD's formal requirements during February and March, 1982, he satisfied those requirements on May 7, 1982 with the mailing of his "Inmate's Notice." Johnson claims that by continuing his trial over 180 days after May 7, 1982, the Oregon trial court violated his rights under the IAD. The magistrate and district court did not address this claim at all.

### A. *Standard of Review*

■ We review de novo a petition for habeas relief, such as Johnson's, based on an alleged violation of the IAD. *See Hudson v. Moran*, 760 F.2d 1027, 1028 (9th Cir.1985).

### B. *Johnson's Attempt to Invoke the IAD in February-March, 1982*

Johnson contends that his actions in February and March, 1982 constituted "substantial compliance" with the IAD's notice requirements. However, our court and others have expressly stated that the IAD's "formal requirements must be met before the timely trial provisions of the IAD come into play." *Tinghitella*, 718 F.2d at 312; *accord Nash v. Jeffes*, 739 F.2d 878, 884 (3d Cir.1984) (noting that "courts have generally required that prisoners must strictly comply with IAD procedures before they

---

**4.** Because the Oregon courts did not issue written opinions or make formal, written findings of fact regarding Johnson's IAD claim, the district court was required to make such findings

itself, and was not required to defer to the state courts's factual determinations. *See generally Sumner v. Mata*, 449 U.S. 539, 546–47, 101 S.Ct. 764, 768–69, 66 L.Ed.2d 722 (1981).

will dismiss charges on the basis of a violation of [its 180-day time limit]" and noting that "[t]he technical requirements for filing a request for disposition [under the IAD] further the underlying purpose of rapid adjudication"),[5] *rev'd on other grounds sub nom. Carchman v. Nash,* — U.S. —, 105 S.Ct. 3401, 87 L.Ed.2d 516 (1985); *but cf. State v. Seadin,* 181 Mont. 294, 593 P.2d 451, 453 (1979).

■ Johnson's actions during February and March, 1982 did not satisfy the formal requirements of the IAD. His habeas petition to the Multnomah County Circuit Court may have constituted adequate notice to the Oregon courts concerning his place of imprisonment and his desire to be tried within 180 days. However, Johnson did not provide such notice to the Oregon prosecutor, and did not send a certificate of his inmate status to either the Oregon courts or the Oregon prosecutor. Moreover, Johnson's February-March, 1982 IAD request was not channelled to the State of Oregon through California prison officials, as is required under IAD Article III(b). *See Tinghitella,* 718 F.2d at 312. Since Johnson failed to comply with the IAD's formal requirements in February and

March, 1982, the IAD's 180-day clock did not begin running at that time. *See id;* IAD, art. III(a)–(b).

## C. Johnson's May 7, 1982 IAD Request

The State of Oregon concedes that the "Inmate's Notice of Place of Imprisonment and Request for Disposition of Indictments, Information or Complaints"[6] that Johnson prepared on May 7, 1982 satisfied the IAD's formal requirements and commenced the running of the IAD's 180-day clock.[7] Thus, assuming that the IAD clock continued to run uninterrupted, the 180-day period during which Oregon was required to bring Johnson to trial elapsed on November 4, 1982, several days before Johnson moved to dismiss his indictment on IAD grounds. As noted above, Johnson's trial was originally scheduled for September 21, 1982, which would have fallen within the IAD's 180-day period, but it was continued. Johnson therefore has stated the two basic elements necessary to raise an IAD claim: he made a valid IAD request that satisfied the IAD's formal requirements, and he was tried over 180 days after that request was received.

---

5. In *Nash,* the Third Circuit held that a prisoner who had failed to satisfy the precise requirements prescribed by the IAD was nevertheless entitled to habeas relief based on the State of New Jersey's violation of the 180-day time limit. According to the Third Circuit, New Jersey officials had indicated to the prisoner that they regarded a series of letters he sent them as a valid IAD request; under such circumstances, the court concluded that the prisoner "was justified in taking no further action," even though he had not fully complied with the precise requirements of the IAD. 739 F.2d at 884–85. Johnson does not contend that Oregon officials intentionally or unintentionally misled him concerning his attempt to invoke the IAD in February and March, 1982.

6. The "Inmate's Notice" form that Johnson completed is a standard form specifically designed to satisfy the IAD's requirements.

7. It is not clear whether the IAD's 180-day clock starts to run on the date the prisoner requests that his warden forward the necessary papers, on the date the papers are mailed, or on the date the receiving state receives the request.

*See Brown v. Wolff,* 706 F.2d 902, 907 n. 9 (9th Cir.1983) (jurisdictions are divided on this issue). Most states use the date of receipt to trigger the 180-day period. *See, e.g., People v. Bielecki,* 41 Colo.App. 256, 588 P.2d 377, 378 (1978); *Holland v. State,* 265 Ind. 216, 352 N.E.2d 752, 757 (1976); *State v. Ternaku,* 156 N.J.Super. 30, 383 A.2d 437, 439 (1978). The Oregon courts have not decided the issue. *See State v. Miebach,* 52 Or.App. 709, 629 P.2d 1312, 1316 (1981) (under facts of the case, court found it unnecessary to decide whether 180-day period begins to run on date request is sent or on date request is received).

The record before this court in the case at bar does not disclose the date on which the Oregon authorities received Johnson's IAD Notice and Certificate. All we know is that the California Correctional Case Records Supervisor signed the Certificate on May 6, 1982, and Johnson signed the Notice on May 7, 1982. Because the State of Oregon neither presented evidence that the documents were received significantly later, ı.or argued that a different date should be used, we find it appropriate to use May 7, 1982 as the date on which the IAD's 180-day clock began to run.

However, the 180-day period can be extended under certain conditions. The IAD provides that once its 180-day period begins running, *"for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance."* IAD, art. III(a) (emphasis added). Thus, if the September 21, 1982 continuance was granted for "good cause" in a court proceeding attended by Johnson or his counsel, or if Johnson somehow waived his rights under the IAD, the Oregon trial court did not violate the IAD.

■ The record is unclear concerning both the trial court's reasons for and the procedures it employed in granting the September 21, 1982 continuance. We cannot tell whether the continuance was granted following a proceeding in open court, or if so, whether Johnson or his counsel attended the proceeding. These statutory requirements cannot be ignored. *See United States v. Ford,* 550 F.2d 732, 743 (2d Cir. 1977), *aff'd sub nom. United States v. Mauro,* 436 U.S. 340, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978); *Stroble v. Anderson,* 587 F.2d 830, 839 (6th Cir.1978) (IAD's "open court" requirement contemplates a formal proceeding with a judge sitting "on the bench"), *cert. denied,* 440 U.S. 940, 99 S.Ct. 1289, 59 L.Ed.2d 499 (1979). Moreover, nothing in the record indicates that the State demonstrated "good cause" for the continuance. Nor does the record suggest that Johnson expressly waived his rights under the IAD.

■ The only explanation in the record concerning the September 21, 1982 continuance is the ambiguous statement by the Oregon prosecutor that the State had been ready to try the case on September 21, 1982, but the trial was continued "because the defendant was going to enter a plea and apparently [because there was] some difficulty getting on the docket." Nothing in the record reflects that Johnson agreed to the September 21, 1982 continuance.[8]

The determination of who was responsible for the September 21, 1982 continuance and how it came about is critical to the resolution of Johnson's IAD challenge. If Johnson explicitly agreed to the continuance, our decisions suggest that he waived his rights under the IAD and cannot claim that the 180-day period elapsed during that continuance. *See Brown,* 706 F.2d at 907 (noting, however, that such "[a] waiver [should] not [be] ordinarily found from mere silence"); *see also Hudson,* 760 F.2d at 1030–31 (state court's findings that prisoner's requests for continuances and his dilatory tactics caused the IAD's 180-day period to elapse prevent him from raising IAD issue in habeas petition). Conversely, if the continuance resulted from the state court's scheduling problems, our court and others have held that such problems do not constitute "good cause" for exceeding the IAD's time limits, unless the trial judge actively attempted to reassign the prisoner's case to other judges in order to speed along its progress. *See Brown,* 706 F.2d at 906–07 & n. 8; *Ford,* 550 F.2d at 743. Nothing in the record reflects any effort by the trial court to transfer Johnson's case.

■ The State contends that the burden was on Johnson, as a habeas petitioner, to demonstrate that granting the September 21, 1982 continuance violated the IAD. The State contends that because Johnson failed to produce the trial court records relating to the continuance, we should "assume that petitioner himself requested this continuance."

---

8. The State contends that there are statements in the trial court transcript indicating that it was prepared to try Johnson's case on September 21, 1982. It maintains that therefore, any continuance beyond that date must be attributed to Johnson. This does not necessarily follow. The fact that the State was prepared for trial does not automatically indicate that it did not seek the continuance for other reasons (for example, to pursue plea negotiations), or that the trial court did not continue the trial because of its scheduling needs. The IAD requires that requests for and grants of continuances must be documented and must comply with explicit procedural requirements; thus, responsibility for undocumented continuances cannot simply be imputed to a defendant, as the State contends.

However, our court and other courts have never imposed such a burden on habeas petitioners bringing challenges based on the IAD. *See, e.g., Brown,* 706 F.2d at 906–07 (placing burden on state to demonstrate "good cause" for exceeding 180-day time limit, rather than requiring petitioner to demonstrate lack of "good cause"); *Ford,* 550 F.2d at 743 (same placement of burden in federal prosecution). At the trial court level, the burden was on the State either to obtain an explicit waiver from Johnson of his IAD rights, *see Brown,* 706 F.2d at 907 ("[a] waiver [of IAD rights should] not [be] ordinarily found from mere silence"), or to "show good cause in open court in the presence of the prisoner or his counsel for the granting of [the] continuance." *Cody,* 623 F.2d at 102. Since the record does not indicate that the State met either of these burdens at the Oregon trial court, and since Johnson has made a prima facie showing that the IAD's 180-day period was exceeded in his case, the State is required to demonstrate either that the September 21, 1982 continuance was granted in open court, as required under the IAD, or that Johnson consented to the continuance and thereby waived his IAD rights.[9]

Since the issues of whether the September 21, 1982 continuance was granted in open court and whether it was granted with Johnson's consent are determinative of the outcome of Johnson's IAD claim, and since there are no written state court findings on these issues, the district court should have made its own factual findings. *See Cody,* 623 F.2d at 103. The district court did not, however, address Johnson's claim based on his May 7, 1982 IAD request, and therefore made no findings concerning the September 21, 1982 continuance. Since there are no findings we can review, we must remand. *See id.*

### CONCLUSION

We remand to the district court to make two factual determinations. First, it should determine whether the September 21, 1982 continuance was granted for good cause in open court with Johnson or his counsel present, as required under the IAD. Second, if those requirements were not satisfied, the district court should determine whether Johnson explicitly stipulated to the continuance or explicitly waived his right to trial within 180 days.

If the district court finds that no proceeding was held in open court with Johnson or his counsel present, and that no waiver occurred, we direct it to grant Johnson's habeas petition. If, however, the district court concludes either that a proceeding was held complying with the IAD's requirements, or that Johnson waived his right to trial within 180 days, we direct it to report its findings to this court.

REMANDED.

---

9. If the Oregon courts had made explicit findings concerning the September 21, 1982 continuance that supported their rejection of Johnson's IAD claim, the burden would be on Johnson to refute those findings. *See Hudson,* 760

F.2d at 1030. Since no findings were made, however, it is not appropriate to shift the burden of demonstrating that Johnson consented to the continuance, or that it was granted in open court for good cause, away from the State.