106 F.3d 411
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Floyd Bennett THORNTON, Defendant-Appellant.
 No. 95-30403.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 4, 1996.
Decided Jan. 23, 1997.
 
 Before: CANBY, RYMER and KLEINFELD, Circuit Judges:
 
 
 1
 MEMORANDUM*
 
 
 2
 Floyd Bennett Thornton appeals his life sentence for being a convicted felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1). Thornton argues that the district court incorrectly applied the United States Sentencing Guidelines and failed to satisfy two of the Guidelines' procedural requirements.[1] We affirm.
 
 I.
 
 3
 Because the parties are familiar with the facts of this case, we repeat them here only as necessary.
 
 II.
 
 4
 Thornton argues that the district court erred in denying his motion for transfer to federal custody for completion of his sentence. We do not reach that argument, however, because it is not properly before this Court on direct appeal. Any order requiring Thornton's transfer to federal custody would have to be directed to the state authorities, and they are not parties to this proceeding. The State's failure to follow the mandates of the Interstate Agreement on Detainers Act, 18 U.S.C.A.App. § 2, accordingly must be challenged in federal court through a § 2254 motion for writ of habeas corpus. See Hopper v. United States Parole Comm'n, 702 F.2d 842, 846 n. 3 (9th Cir.1983); cf. Johnson v. Stagner, 781 F.2d 758, 761 (9th Cir.1986) ("[I]f a prisoner establishes that he validly invoked the IAD, and that a state court exceeded the IAD's 180-day time limit in bringing him to trial, he is entitled to habeas relief under 28 U.S.C. § 2254.").
 
 III.
 
 5
 Thornton argues that the district court erred in using U.S.S.G. § 2A2.1 (1990) (attempted murder) instead of U.S.S.G. § 4B1.4(b)(3) (1990) (armed career criminal) to calculate his offense level. We agree, but conclude that the error was harmless.
 
 U.S.S.G. § 4B1.4 (1990) states:
 4B1.4 Armed Career Criminal
 
 6
 (a) A defendant who is subject to an enhanced sentence under the provisions of 18 U.S.C. § 924(e) is an armed career criminal.
 
 
 7
 (b) The offense level for an armed career criminal is the greatest of:
 
 
 8
 (1) the offense level applicable from Chapters Two and Three; or
 
 
 9
 (2) the offense level from § 4B1.4 (Career Offender) if applicable; or
 
 
 10
 (3) (A) 34 if the defendant used or possessed the firearm or ammunition in connection with a crime of violence or controlled substance offense ...; or
 
 
 11
 (B) 33, otherwise.
 
 
 12
 At resentencing, the district court concluded that the offense level calculated under the armed career criminal guideline was less than the offense level applicable from Chapters Two and Three: use of the armed career criminal guideline results in an offense level of 33/34,[2] while use of Chapters Two and Three results in an offense level of 36 (base offense level of 28 for attempted murder, a four-level increase for permanent or life threatening injury, a two-level increase for vulnerable victim, and a two-level increase for restraint of victim).
 
 
 13
 As we explain below, the district court erred in increasing Thornton's offense level by four levels pursuant to U.S.S.G. § 2A2.1(b)(1)(A) ("permanent or life-threatening bodily injury"). As a result, the district court did, in fact, err in using U.S.S.G. § 2A2.1 (1990) instead of U.S.S.G. § 4B1.4(b)(3) (1990) to calculate Thornton's offense level. Without the four-level increase for permanent or life-threatening injury, the offense level from Chapters Two and Three would be 32 instead of 36, which is lower than either (33 or 34) offense level for an armed career criminal.
 
 
 14
 The district court's error, however, was harmless. Even if it had used U.S.S.G. § 4B1.4(b)(3) (1990) to calculate Thornton's offense level instead of U.S.S.G. § 2A2.1 (1990), the district court would have sentenced Thornton to life imprisonment, because Thornton's adjusted offense level (armed career criminal offense-level plus departures[3]) would still have placed him in the 360--life sentencing range (33 k 6 = 39). We do not, therefore, have to vacate Thornton's sentence and remand for resentencing. See Williams v. United States, 1112 S.Ct. 1112, 112-21 (1992) (noting that a reviewing court is not required to vacate a sentence erroneously calculated by a district court if "the reviewing court concludes, on the record as a whole, that the error was harmless, i.e., that the error did not affect the district court's selection of the sentence imposed").
 
 IV.
 
 15
 Thornton argues that the district court erred in increasing his offense level by four levels on the ground that Prince suffered "permanent or life-threatening bodily injury," U.S.S.G. § 2A2.1(b)(1)(A) (1990), because Prince died as a result of his gunshot wounds. The government counters that the increase was warranted because, "[i]n our common human experience, notwithstanding the miracle of Lazarus, death is a permanent condition."
 
 
 16
 The government's argument, though creative, is legally incorrect. As defined by U.S.S.G. § 1B1.1 (1990), Application Note (h), "[p]ermanent or life-threatening bodily injury' means injury involving a substantial risk of death...." (emphasis added). Actual death clearly does not fall within that category--it is not an injury, and it does not pose a substantial risk of death. Moreover, neither of the two leading treatises on the Guidelines cite a case in which the upward-adjustment was imposed when the victim died. See Roger W. Haines, et. al., Federal Sentencing Guidelines Handbook 54 (1995 ed.); Thomas W. Hutchison & David Yellen, Federal Sentencing Law and Practice 19 (1994 ed.) (noting that the Commission intends bodily injury to be "of a type for which medical attention ordinarily would be sought").
 
 
 17
 The district court's error, however, was harmless. As we explained above, the district court would have sentenced Thornton to life imprisonment even if it had not increased Thornton's base offense level by four levels on the ground that Prince suffered permanent or life-threatening injury.
 
 V.
 
 18
 Thornton argues that the district court erred in increasing his offense level by two levels on the ground that he "knew or should have known that a victim of the offense was unusually vulnerable due to age, physical or mental condition ...," U.S.S.G. § 3A1.1 (1990), because "[t]he decedent was no more vulnerable than any other person to being approached from behind and shot in the back of the head."
 
 
 19
 Thornton's argument is completely without merit. Prince suffered from Parkinson's disease, and Thornton knew Prince prior to the night of the murder. Thornton thus "knew or should have known" that Prince was a vulnerable victim. Moreover, U.S.S.G. § 3A1.1 (1990), Application Note (1), states that "the adjustment would apply ... where the defendant selected a handicapped victim."
 
 VI.
 
 20
 Thornton argues that the district court erred in increasing his offense level by two levels on the ground that "a victim was physically restrained in the course of the offense," U.S.S.G. § 3A1.3 (1990), because Bennett, Prince's elderly female companion, was not the victim of the offense.
 
 
 21
 Thornton's argument is meritless. We have held that a vulnerable victim need not be the victim of the offense of conviction, United States v. Haggard, 41 F.3d 1320, 1326 (9th Cir.1994), nor must be the victim whose "unusually heinous, cruel, brutal, or degrading" treatment is the predicate for an upward departure pursuant to U.S.S.G. § 5K2.8 (1990). Id. at 1327. The same is necessarily true, therefore, of a restrained victim, especially in light of the fact that the Guidelines "specifically instruct the district court to take into account in adjusting the defendant's base offense level 'all harm' the defendant causes." See id. at 1326.
 
 VII.
 
 22
 Thornton argues that the district court erred in refusing to decrease his offense level by two levels for his acceptance of responsibility. See U.S.S.G. § 3E1.1 (1990). Although the district court awarded Thornton the two-level reduction at his initial sentencing hearing, the court changed its mind and refused to award Thornton the reduction at his second sentencing hearing, on the ground that "the conduct here of this defendant, that while he was on escape status for a few days, he murdered Dale Duke, is inconsistent" with acceptance of responsibility. According to Thornton, "[t]he District Court's attempt at justification of its change of heart ... suggests dissatisfaction mandated by the Guidelines, rather than a reasoned judgment based on the facts."
 
 
 23
 Thornton is incorrect. A defendant who pleads guilty is not entitled to a reduction under U.S.S.G. § 3E1.1 (1990) as a matter of right, U.S.S.G. § 3E1.1(c) (1990), and we have approved a district court's denial of a two-level reduction for acceptance of responsibility where the defendant's continued criminal conduct negated her declarations of acceptance of responsibility. United States v. Cooper, 912 F.2d 344, 346 (9th Cir.1990). Moreover, on remand, the district court was under no obligation to avoid reconsidering its earlier sentencing decisions. United States v. Ponce, 51 F.3d 820, 826 (9th Cir.1995) (holding that reconsideration of entire sentence on remand does not violate due process or constitute double jeopardy).
 
 VIII.
 
 24
 At sentencing, the district court upwardly-departed four levels from Thornton's calculated offense level pursuant to U.S.S.G. § 5K2.1 ("Death"): two levels for Prince's death; and two levels for the means by which Prince's life was taken. Thornton argues that both upward departures were erroneous under the three-part test that we established in United States v. Lira-Barraza, 941 F.2d 745, 746-47 (9th Cir.1991) (en banc).
 
 
 25
 A. Prince's Death.
 
 
 26
 Thornton's argument that the district court's erred in upwardly-departing two levels because Prince died as a result of his conduct is without merit.[4] That departure satisfies Lira-Barraza. First, "the district court had legal authority to depart," id. at 746, because the Guidelines specifically state that "[i]f death resulted, the court may increase the sentence above the authorized guideline range." U.S.S.G. § 5K2.1 (1990). Moreover, Thornton was sentenced under the guideline for armed career criminals, U.S.S.G. § 4B1.4 (1990), of which death is not a specific offense characteristic. As a result, under the armed career criminal guideline, death is "an aggravating circumstance of a kind or to a degree the Commission did not adequately take into account when formulating the Guidelines." Lira-Barraza, 941 F.2d at 746.
 
 
 27
 Second--and obviously--the district court did not clearly err in its finding that Prince died as a result of Thornton's conduct.
 
 
 28
 Third, the extent of the departure was reasonable. The district court departed upward two levels by analogy to other sections of the Guidelines--here, U.S.S.G. § 2A2.2(b)(3)(A), (B), and (C) (1990), which govern adjustments for degree of bodily injury--as required by Lira-Barraza. See Lira Barraza, at 747-51.
 
 
 29
 B. Means by which Prince's Life was Taken.
 
 
 30
 Thornton's argument that the district court erred in upwardly-departing two levels because of the means by which Prince's life was taken is also without merit. First, the Guidelines state that "the means by which life is taken" was an appropriate ground for upward departure. U.S.S.G. § 5K2.1 (1990).
 
 
 31
 Second, the district court did not clearly err in finding that the means by which Prince's life was taken demonstrated "the defendant's gross disregard for human life": Thornton does not contest that he shot Prince in the back of the head, execution-style.
 
 
 32
 Third, the extent of the departure, two levels, was reasonable. The district court expressly analogized to other Guideline adjustments for aggravating circumstances, mentioning "role in the offense under 3B1.1, reckless endangerment under 3C1.2, obstruction under 3C1.1, and more than minimal planning under 2F1.1(b)(2)."
 
 IX.
 
 33
 Thornton argues that the district court erred in upwardly-departing two levels because of the "unusually heinous, cruel, and brutal conduct of the defendant with respect to the restraint of Bennett." That departure, however, clearly satisfies Lira-Barraza.
 
 
 34
 First, such a departure is authorized by the Guidelines, which state that "[i]f the defendant's conduct was unusually heinous, cruel, brutal, or degrading to the victim, the court may increase the sentence above the guideline range to reflect the nature of the conduct." U.S.S.G. § 5K2.8 (1990) ("Extreme Conduct").
 
 
 35
 Second, the district court did not clearly err in finding that Thornton treated Bennett in an "unusually heinous, cruel, brutal, [and] degrading" manner. Thornton does not contest that he bound Bennett to her wheelchair, rolled her next to Prince's body, and abandoned her until she was discovered the next day.
 
 
 36
 Third, the extent of the departure, two levels, was reasonable. The district court expressly analogized to other Guideline adjustments for aggravating circumstances, again mentioning "role in the offense under 3B1.1, reckless endangerment under 3C1.2, obstruction under 3C1.1, and more than minimal planning under 2F1.1(b)(2)."
 
 X.
 
 37
 Thornton argues that the district court erred in failing to state on the record its reasons for sentencing him to life imprisonment. Thornton, however, did not claim at sentencing that the district court's reasons for imposing a life sentence were inadequate; he thus waived his right to raise that issue on appeal. United States v. Caicedo, 937 F.2d 1227, 1236 (7th Cir.1991); see also United States v. Visman, 919 F.2d 1390, 1394 (9th Cir.1990), cert. denied, 502 U.S. 969 (1991).
 
 XI.
 
 38
 Finally, Thornton argues that the district court erred in failing to require the probation officer to prepare a new presentence report for his resentencing. Thornton, however, did not raise that issue at sentencing; he thus waived his right to raise it on appeal. Visman, 919 F.2d at 1394.
 
 CONCLUSION
 
 39
 In sentencing Thornton to life imprisonment, the district court did not commit any error that requires this court to vacate that sentence and remand for resentencing. Thornton's sentence, therefore, is AFFIRMED.
 
 RYMER, Circuit Judge, concurring:
 
 40
 I believe the district court's sentencing calculation pursuant to U.S.S.G. § 2A2.1(b)(1) (attempted murder) was also correct, because I believe a four-level adjustment due to "permanent or life-threatening bodily injury" was appropriate in this instance. Even if "death" itself is not contemplated in the adjustment, as defined in the Commentary 1(h) to U.S.S.G. § 1B1.1, Mr. Prince certainly experienced a "substantial risk of death," "loss or substantial impairment of a bodily member, organ, or mental faculty," and "obvious disfigurement" after Thornton shot him in the back of the head, and in the moments before he actually died.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 We review de novo the district court's interpretation and application of the Guidelines. United States v. France, 57 F.3d 865, 866 (9th Cir.1995)
 
 
 [2]
 Because the district court concluded that the offense level resulting from Chapters Two and Three was 36, it did not decide whether Thornton used the firearm in connection with a crime of violence or a controlled-substance offense. We need not reach that issue, however, because even if the district court erred in concluding that the Chapters Two and Three offense level was greater than U.S.S.G. § 4B1.4(b)(3) (1990) offense level, the error was harmless: Thornton's sentencing range (360--life) would still be the same
 
 
 [3]
 Unlike the base offense level for an offense listed in Chapter Two, the offense level for an armed career criminal is not subject to the adjustments listed in Chapter 3. See U.S.S.G. § 4B1.4(b) (stating that the offense level for an armed career criminal is "the offense level applicable from Chapters Two and Three; or ... 34, if the defendant used or possessed the firearm or ammunition in connection with a crime of violence or controlled substance offense ...; or 33, otherwise") (emphasis added)
 
 
 [4]
 This analysis, of course, proceeds in light of our earlier conclusion that the district court erred in increasing Thornton's offense level by four levels for "permanent or life-threatening injury." Had we not reached that conclusion, the district court's decision to award a two-level upward departure for Prince's death would have constituted impermissible double-counting