Thomas Robert MITCHELL and Robert
Charles Shepherd, Jr.,
Petitioners–Appellants,

v.

SUPERIOR COURT FOR the COUNTY
OF SANTA CLARA, STATE OF CAL-
IFORNIA, Respondent–Appellee.

No. 79–2502.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 17, 1980.

Decided Oct. 7, 1980.

Rehearing Denied Nov. 21, 1980.

Sheldon Portman, San Jose, Cal., for peti-
tioners–appellants.

768

Michael D. Whelan, Deputy Atty. Gen., San Francisco, Cal., argued, Don Jacobson, San Francisco, Cal., on brief, for respondent–appellee.

Before MERRILL and WALLACE, Circuit Judges, and WYATT,[*] District Judge.

WALLACE, Circuit Judge:

Mitchell and Shepherd were charged in California state court with various narcotics violations of the California Health and Safety Code. In a motion to dismiss the charges they claimed that police conduct interfered with their constitutional rights to effective assistance of counsel and due process of law, and that the police coerced them to work as undercover agents in violation of the constitutional guarantee against involuntary servitude. The trial court denied the motion to dismiss after an evidentiary hearing. Mitchell and Shepherd then withdrew their previously entered not-guilty pleas, and pled guilty to two of the six counts with which they were charged; the remaining four counts were dismissed pursuant to a plea bargain. The California Court of Appeal reviewed the issues raised in the motion to dismiss and affirmed the conviction. The California Supreme Court denied hearing. Mitchell and Shepherd then petitioned in federal district court for habeas corpus relief, once again asserting denial of the rights to effective assistance of counsel and due process of law, and the imposition of involuntary servitude. The district court denied the petition. We affirm.

I

On the evening of April 27, 1976, Mitchell and Shepherd were arrested at their apartment after selling a quantity of LSD to a special agent of the Santa Clara County Narcotics Bureau. The police took them to separate rooms of the apartment, informed them of the charges that would be brought against them, and asked them to assist the police by setting up undercover drug purchases. In return for the undercover work the police offered to assist Mitchell and Shepherd in obtaining a pretrial release without bail, and to write a letter to the Adult Probation Department describing Mitchell's and Shepherd's cooperation in the undercover work. Mitchell and Shepherd accepted the police offer.

After being booked at the county jail, but before their release without bail, Mitchell and Shepherd met with an attorney from the public defenders office. The attorney warned them of the dangers of undercover narcotics work and advised them to reconsider their decision. Despite the attorney's warning, Mitchell and Shepherd arranged a purchase of heroin during which a drug dealer known as "Black Bob" was arrested.

Following their arraignment, Rose, a second attorney from the public defenders office, met with Mitchell and Shepherd to ascertain what arrangements had been made with the police. She also contacted Police Officer Kaiser, who denied having made promises to Mitchell and Shepherd. Rose told Kaiser that she did not want her clients working for him. Kaiser replied that he would leave that decision to her clients.

In order to maintain their release without bail and to secure lighter sentences, Mitchell and Shepherd continued working for the police. After they had succeeded in setting up two more narcotics purchases, Officer Kaiser met twice with the deputy district attorney assigned to the cases to persuade him to reduce the charges against Mitchell and Shepherd. The deputy district attorney refused.

At a preliminary hearing held in June 1976, the deputy district attorney moved to revoke Mitchell's and Shepherd's release without bail, stating that their corporation

* Honorable Inzer B. Wyatt, United States District Judge, Southern District of New York, sitting by designation.

with police had been minimal and that bail would be necessary to ensure their presence at trial. The motion was granted. Mitchell was unable to post bail, and was remanded to the county jail where he was beaten by other prisoners, apparently in retaliation for his undercover work and the resulting arrest of "Black Bob." Before the preliminary hearing, Shepherd was also assaulted, and his attackers cut an "X" in his hand purportedly to identify him for later attacks. Following revocation of the release without bail, Shepherd's mother telephoned Kaiser, who had not been present at the preliminary hearing. Kaiser blamed the revocation of her son's release on the public defenders and their objection to his undercover work.

Following the trial court's denial of their motion to dismiss for various constitutional violations, Mitchell and Shepherd changed their pleas to guilty. In doing so, Mitchell and Shepherd stated that they made such pleas "without waiving any rights to challenge on appeal the motion to dismiss." When the Adult Probation Department contacted Kaiser in preparation for a presentencing report, Kaiser advised only that Mitchell and Shepherd had been unable to set up any large transactions. Kaiser never fulfilled his promise to write to the probation department about the undercover work of Mitchell and Shepherd.

From these facts, Mitchell and Shepherd claimed the following constitutional violations in their petition for habeas corpus: (1) that Kaiser interfered with their attorney–client relationship by denying to Rose that promises had been made to Mitchell and Shepherd, by disregarding Rose's request that she be involved in any future negotiations for undercover work, and by suppressing favorable information that would have aided Rose in plea bargaining; (2) that Kaiser vindictively arranged for revocation of Mitchell's and Shepherd's release without bail in punishment for their exercise of the right to counsel, as demonstrated by Kaiser's comments during his telephone conversation with Shepherd's mother, and that this vindictive revocation of their release violated due process because it was made with the knowledge that Mitchell would be assaulted in jail and thus "shocks the conscience"; and (3) that police promises of pretrial release and light sentences coerced them to work as undercover informants and amounted to involuntary servitude in violation of the Thirteenth Amendment and the Federal Antipeonage Statute, 42 U.S.C. § 1994. In denying the petition, the district court concluded, in part, that Mitchell's and Shepherd's guilty pleas foreclosed relief by federal habeas corpus. Although the propriety of that conclusion was inadequately discussed in the briefs submitted to us, we have determined that the district court's ruling was correct.

II

As a general rule, one who has voluntarily and intelligently pled guilty to a criminal charge may not subsequently seek federal habeas relief on the basis of pre-plea constitutional violations. The Supreme Court has stated:

[A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea  .    .  .  .

*Tollett v. Henderson*, 411 U.S. 258, 267, 93 S.Ct. 1602, 1608, 36 L.Ed.2d 235 (1973). *See also Brady v. United States*, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970); *McMann v. Richardson*, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970); *Parker v. North Carolina*, 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785 (1970); *Journigan v. Duffy*, 552 F.2d 283, 287 (9th Cir. 1977). Unless Mitchell's and Shepherd's petition comes within one of several exceptions to this general rule (*Tollett* rule), their guilty pleas foreclose federal habeas relief.

## A.

█ The first and most obvious exception to the *Tollett* rule is implicit in the above–quoted language: a guilty plea will not preclude federal habeas relief if it was not voluntarily and intelligently made with competent advice of counsel. 411 U.S. at 267, 93 S.Ct. at 1608. Mitchell and Shepherd do not contest the voluntary and intelligent nature of their guilty pleas; and the record indicates that the pleas were knowingly and freely given. The contention that police conduct interfered with their rights to effective assistance of counsel relates not to the guilty plea, but to conduct that allegedly occurred prior to the hearing on their motion to dismiss. Only after the state trial court had denied the dismissal motion did Mitchell and Shepherd, with the full advice of their attorneys, change their pleas to guilty. No claim is made that the pre–hearing conduct of the police impaired the advice of counsel received after the hearing. We conclude that the guilty pleas were voluntarily and intelligently made with competent advice of counsel.

## B.

██ In *Journigan v. Duffy, supra*, 552 F.2d 283, we concluded that a guilty plea precludes federal habeas relief not because a defendant thereby waives his right to seek it, but because a guilty plea admits factual guilt. *Id.* at 287–88, *citing Menna v. New York*, 423 U.S. 61, 62 n.2, 96 S.Ct. 241, 242 n.2, 46 L.Ed.2d 195 (1975) (per curiam). "A guilty plea . . . simply renders irrelevant those constitutional violations not logically inconsistent with the valid establishment of factual guilt and which do not stand in the way of conviction, if factual guilt is validly established." *Menna v. New York, supra*, 423 U.S. at 62 n.2, 96 S.Ct. at 242 n.2. Given this basis for the *Tollett* rule, a guilty plea will not bar "federal habeas corpus where the underlying constitutional claim goes to the power of the state to bring the defendant into court to answer the charges brought against him." *Journigan v. Duffy, supra*,

552 F.2d at 288, *citing Blackledge v. Perry*, 417 U.S. 21, 30, 94 S.Ct. 2098, 2103, 40 L.Ed.2d 628 (1974).

██ Mitchell and Shepherd attempt to come within this exception to the *Tollett* rule by contending at oral argument that their allegation of vindictive police conduct is analogous to the claim permitted in *Blackledge v. Perry, supra*. We disagree. The government conduct involved in *Blackledge* was the bringing of a felony charge in alleged retaliation for a misdemeanant's exercise of his statutory right to a trial *de novo* on his misdemeanor charge. Thus, "[t]he very initiation of the proceedings against [the defendant] operated to deny him due process of law." *Id.* at 30–31, 94 S.Ct. at 2104. The defendant's due process challenge invalidated the very charge on which he was being held. By contrast, the vindictive conduct alleged by Mitchell and Shepherd, which they claim violated due process, was the police–induced revocation of their release without bail. Even if true, this allegation would not support a claim that their convictions were improperly sought or rendered, as was the felony conviction in *Blackledge*. Thus, *Blackledge* does not entitle Mitchell and Shepherd to consideration of their petition for habeas corpus.

Like their claim of vindictive conduct, Mitchell's and Shepherd's third claim, that police coercion amounted to the imposition of involuntary servitude, does not go to the power of the state to bring them into court. They have thus alleged no claim that may be considered in a federal habeas petition under the *Journigan* exception to the *Tollett* rule.

## C.

In *Lefkowitz v. Newsome*, 420 U.S. 283, 95 S.Ct. 886, 43 L.Ed.2d 196 (1975), the Supreme Court examined the effect upon the *Tollett* rule of a state statute that expressly permitted appeal from a guilty plea.[1] The defendant had pled guilty in a

---

1. In *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), the Court implic-

itly disapproved *Newsome's* unconsidered acceptance of jurisdiction to hear a Fourth

New York trial court, had appealed his conviction through the state system, and had finally filed a petition for federal habeas corpus raising the very Fourth Amendment issues that the New York statute had permitted him to appeal. The Court held "that when state law permits a defendant to plead guilty without forfeiting his right to judicial review of specified constitutional issues, the defendant is not foreclosed from pursuing those constitutional claims in a federal habeas corpus proceeding." *Id.* at 293, 95 S.Ct. at 892.

The Court in *Newsome* departed from the *Tollett* rule for two reasons. First, under the New York statute, a guilty plea did not constitute "a break in the chain of events which ha[d] preceded it in the criminal process," *Tollett v. Henderson, supra*, 411 U.S. at 267, 93 S.Ct. at 1608, because "[t]he guilty plea operate[d] simply as a procedure by which the constitutional issues [could] be litigated without the necessity of going through the time and effort of conducting a trial . . . ." *Lefkowitz v. Newsome, supra*, 420 U.S. at 289–90, 95 S.Ct. at 890. Thus, the state acquired no "legitimate expectation of finality in the conviction . . . ." *Id.* at 289, 95 S.Ct. at 889. Second, the Court concluded that denying the right to file a federal habeas corpus petition would "frustrate the State's policy in providing for post–guilty plea appellate review . . . ." *Id.* at 292, 95 S.Ct. at 891. That policy was to promote the use of certain appealable guilty pleas in place of expensive and time–consuming criminal trials undertaken for no reason other than to preserve constitutional issues for appeal. *Id.*

Although California has a statute, similar to the statute considered in *Newsome*, which permits the appeal of Fourth Amendment claims after a guilty plea, *see Lefkowitz v. Newsome, supra*, 420 U.S. at 287 n.3, 95 S.Ct. at 888 n.3, that California statute was not made the basis for Mitchell's and Shepherd's appeal, since neither defendant had a colorable Fourth Amendment claim. Rather, they appealed pursuant to California Penal Code section 1237.5, a provision substantially different from the statute considered in *Newsome*. Section 1237.5 provides that no appeal may be taken from a conviction based upon a guilty plea unless: (1) the defendant has filed a written statement with the trial court setting forth "reasonable constitutional, jurisdictional, or other grounds going to the legality of the proceedings," and (2) the trial court has responded by granting a certificate of probable cause for appeal.[2] Mitchell and Shepherd filed written statements asserting the constitutional issues raised in their motion to dismiss and the trial court granted a certificate of probable cause for appeal.

■ To determine whether the *Newsome* exception should apply to claims appealable under section 1237.5, we must examine that provision's purpose and effect. The California Supreme Court has concluded that section 1237.5 "was intended to apply only to a situation in which a defendant claims that his plea of guilty was invalid." *People v. Ward*, 66 Cal.2d 571, 574, 58 Cal.Rptr. 313, 315, 426 P.2d 881, 883 (1967). It has further stated:

> Even prior to the 1965 enactment of section 1237.5 a defendant could attack the

Amendment claim in a habeas proceeding. The Court held that habeas relief on Fourth Amendment grounds is unavailable "where the State has provided an opportunity for full and fair litigation of [the] Fourth Amendment claim." *Id.* at 494, 96 S.Ct. at 3052 (footnote omitted). The Court did not, however, disapprove the reasoning of the *Newsome* exception to the *Tollett* rule. *See Journigan v. Duffy*, 552 F.2d 283, 286 n.3 (9th Cir. 1977).

2. No appeal shall be taken by defendant from a judgment of conviction upon a plea of guilty

or nolo contendere, or a revocation of probation following an admission of violation, except where:

  (a) The defendant has filed with the trial court a written statement, executed under oath or penalty of perjury showing reasonable constitutional, jurisdictional, or other grounds going to the legality of the proceedings; and

  (b) The trial court has executed and filed a certificate of probable cause for such appeal with the county clerk.

Cal.Penal Code § 1237.5.

validity of his guilty plea only upon limited appeal grounds, such as lack of jurisdiction of the trial court or the legality of the proceedings. (*Stephens v. Toomey* (1959) 51 Cal.2d 864, 870 [338 P.2d 182].) Section 1237.5, while codifying and perhaps somewhat broadening these grounds, added provisions, not previously set forth, that one of the specified grounds for appeal be stated by the defendant in a declaration under penalty of perjury and that a certificate of probable cause for the appeal be filed by the trial judge. The primary purpose of these new requirements is to prevent frivolous appeals challenging the validity of guilty pleas.

*Id.* 66 Cal.2d at 575, 58 Cal.Rptr. at 315, 426 P.2d at 883. Thus, section 1237.5 codified previously recognized grounds for appealing convictions based on guilty pleas–grounds going to the validity of the plea–and added a screening device to eliminate frivolous appeals. This purpose, and the post–trial probable cause procedure used to effectuate it, distinguish section 1237.5 from the statute considered in *Newsome* and convinces us that *Newsome* does not authorize Mitchell and Shepherd to seek federal habeas relief.

The statute in *Newsome* granted an absolute right to appeal any guilty–plea conviction raising Fourth Amendment suppression issues, a right that previously had not existed in New York. *See McMann v. Richardson, supra*, 397 U.S. at 766 & n.11, 90 S.Ct. at 1446 & n.11. The statute thus removed New York's previous "expectation of finality" regarding Fourth Amendment issues involved in guilty–plea convictions: after its enactment, a guilty plea in such cases represented no break in the criminal–process chain of events. Section 1237.5, by contrast, did not decrease California's "expectation of finality." According to the California Supreme Court, section 1237.5 simply codified preexisting grounds for appealing guilty–plea convictions and added a new screening requirement. Therefore, a guilty plea under section 1237.5 constitutes as great "a break in the chain of events which has preceded it in the criminal process," ·

*Tollett v. Henderson, supra*, 411 U.S. at 267, 93 S.Ct. at 1608, as did guilty pleas entered before section 1237.5 was enacted. Moreover, the post–conviction issuance of a certificate of probable cause is an uncertain event at the time of the guilty plea and will issue only upon a finding that colorable constitutional infirmities may undermine the validity of the plea. Thus, at the time of the judgment the state acquires at least as legitimate an expectation of finality in the conviction as it would acquire after any presumably valid guilty plea. These differences between section 1237.5 and the statute considered in *Newsome* make inapplicable in this case the first reason for the *Newsome* exception to the *Tollett* rule.

The second reason for the *Newsome* decision is also inapplicable. A Supreme Court declaration that federal habeas relief was precluded by the guilty plea in *Newsome* clearly would have frustrated New York's efforts to eliminate needless criminal trials. 420 U.S. at 292–93, 95 S.Ct. at 891–892. The purpose of section 1237.5, however, is not to eliminate needless trials, but to screen out frivolous appeals from among appeals which the state already permits. *People v. Kaanehe*, 19 Cal.3d 1, 9, 136 Cal. Rptr. 409, 414, 559 P.2d 1028, 1033 (1977); *People v. Ward, supra*, 66 Cal.2d 576–77, 58 Cal.Rptr. at 316, 426 P.2d at 884; *People v. Chen*, 37 Cal.App.3d 1046, 1048, 112 Cal. Rptr. 894, 895 (1974); *People v. Warburton*, 7 Cal.App.3d 815, 819, 86 Cal.Rptr. 894, 896 (1970), *cert. denied*, 400 U.S. 1022, 91 S.Ct. 587, 27 L.Ed.2d 634 (1971). This screening purpose will not be frustrated by denial of federal habeas corpus relief in section 1237.5 appeals.

Because the reasoning of *Newsome* does not apply to section 1237.5, Mitchell and Shepherd may not rely upon *Newsome* to avoid the preclusive effect of their guilty plea. They have alleged no constitutional violations going to the validity of their plea or to the power of the state to bring them to trial. Finally, then, we must consider the only additional possibility for avoiding the *Tollett* rule, and the primary contention made by Mitchell and Shepherd before us,

that the conditional nature of their plea preserved their right to seek federal habeas relief.

### D.

When Mitchell and Shepherd entered their guilty plea, they expressly stated that they were reserving the right to appeal the trial court's denial of their motion to dismiss. We have previously held, however, that a criminal defendant may not alter the preclusive effect of his guilty plea merely by conditioning it upon preservation of the right to appeal. *United States v. Benson*, 579 F.2d 508 (9th Cir. 1978). Although *Benson* considered the effect of a guilty plea entered in federal district court upon a direct appeal from the resulting conviction, we find its reasoning applicable in this case. "A criminal defendant and the prosecutor may not contractually suspend the operation of the rules announced in [Supreme Court] cases in order to give the defendant a right which the Court has clearly ruled he does not have." *Id.* at 511. Moreover, California cases clearly hold that conditional guilty pleas will not give rise to the right to appeal if that right would have not otherwise been available under section 1237.5. *People v. Lee*, 100 Cal.App.3d 715, 718, 161 Cal.Rptr. 162, 163–64 (1980); *People v. Meals*, 49 Cal.App.3d 702, 709, 122 Cal.Rptr. 585, 589–90 (1975). Thus, it was section 1237.5, and not the conditional nature of Mitchell's and Shepherd's guilty pleas, that granted them the right to appeal their convictions through the state system. As we have already concluded, section 1237.5 does not grant defendants the right to seek habeas relief in federal court.

AFFIRMED.

MERRILL, Circuit Judge, concurring:

One ground on which the district judge denied habeas corpus was that appellants had failed to show that their convictions resulted from the police conduct of which they complained, or that that conduct had contributed to their convictions. I would affirm judgment on that ground. Thus, I concur in the result reached by the majority.

However, I disagree with the conclusion of the majority that by pleading guilty under § 1237.5 of the California Penal Code appellants lost their right to seek federal habeas corpus review of pre–plea constitutional violations. As I read *Lefkowitz v. Newsome*, 420 U.S. 283, 95 S.Ct. 886, 43 L.Ed.2d 196 (1975), it holds contrary to the majority's reasoning.

In *Newsome*, the Court held that "when state law permits a defendant to plead guilty without forfeiting his right to judicial review of special constitutional issues, the defendant is not foreclosed from pursuing those constitutional claims in a federal habeas proceeding." 420 U.S. at 293, 95 S.Ct. at 892.

Neither the *source* of the state right to appeal following a guilty plea nor the legislative purpose behind it is the critical consideration; rather, the right to seek federal habeas corpus review lies in the fact that state law permits an appeal under the particular circumstances. *Newsome* imposes no conditions nor reserves any exceptions to this right.

Thus, I cannot agree with the majority that since the state appeal here was taken under a statutory provision different from that in *Newsome, Newsome* does not apply. Here, appellants had moved to dismiss the indictment for alleged violations of the Sixth, Thirteenth and Fourteenth Amendments. When that motion was denied, they pleaded guilty, reserving their right to appeal denial of their motion. They complied with the procedural requirements of § 1237.5 and their appeal was duly entertained by the state court of appeal. It hardly lies with us to assert in effect that they had no right to appeal under state law. (See majority opinion, pages 771–772.)

Where the state has indicated a policy of permitting an appeal on constitutional issues following a guilty plea; where it is recognized that that policy serves the public purpose of eliminating time consuming trials where constitutional rights, rather than guilt, are at issue; I fail to see how we can

construe that policy as limited to appeals asserting Fourth Amendment rights. The result is that a defendant, factually guilty beyond question, would feel compelled to plead not guilty and undergo trial to preserve review of his constitutional contentions. This is the outcome *Newsome* wanted to avoid. To invite that result here makes little sense to me.