**Mark Daniel WALTERS, Petitioner,**

v.

**PEOPLE OF the STATE OF CALIFORNIA and Daniel E. Lungren, Attorney General of the State of California, Respondents.**

**No. CV 97–2810–GHK(RC).**

United States District Court,
C.D. California.

March 17, 1998.

---

Mark Daniel Walters, Riverside, CA, pro se.

Sara Gros–Cloren, California Office of Attorney General, San Diego, CA, for Respondents.

## ORDER ADOPTING REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

KING, District Judge.

Pursuant to 28 U.S.C. Section 636, the Court has reviewed .the Petition and other papers along with the attached Report and Recommendation of United States Magistrate Judge Rosalyn M. Chapman, as well as petitioner's objections filed March 4, 1998, and has made a *de novo* determination.

IT IS ORDERED that (1) the Report and Recommendation is approved and adopted; (2) the Report and Recommendation is adopted as the findings of fact and conclusions of law herein; and (3) Judgment shall be entered denying the petition for writ of habeas corpus and dismissing the action with prejudice.

IT IS FURTHER ORDERED that the Clerk shall serve copies of this Order, the Magistrate Judge's Report and Recommendation and Judgment by the United States mail on petitioner and counsel for respondents.

## REPORT AND RECOMMENDATION ON A STATE HABEAS CORPUS PETITION

CHAPMAN, United States Magistrate Judge.

This Report and Recommendation is submitted to the Honorable George H. King, United States District Judge, pursuant to the provisions of 28 U.S.C. § 636 and General Order 194 of the United States District Court for the Central District of California.

### BACKGROUND

#### I

In an information filed February 18, 1994, in Case No. CR–53580 in the Superior Court for Riverside County, petitioner Mark Daniel Walters was charged with the following offenses, occurring on or about January 23, 1994: evading a peace officer in violation of

California Vehicle Code ("V.C.") § 2800.2, a felony (count 1), the manufacture, sale and possession of a throwing weapon known as "shurikens" in violation of California Penal Code ("P.C.") § 12020(a), a felony (count 2), and possession of marijuana in violation of Health & Safety Code ("H.S.C.") § 11357(b), a misdemeanor (count 3). Lodgment No. 1. On March 8, 1994, in Case No. CR–54250 in the Superior Court for Riverside County, the petitioner was charged with the following offenses, occurring on or about December 22, 1993: carjacking in violation of P.C. § 215, a felony (count 1), driving or taking a motor vehicle without the consent of the vehicle's owner in violation of V.C. § 10851, a felony (count 2), and robbery in violation of P.C. § 211, a felony (count 3).[1] Lodgment No. 2.

On May 18, 1994, the petitioner, pursuant to a plea bargain, pleaded guilty to, and was convicted of, evading a peace officer (Case No. CR–53580, count 1) and second degree robbery (Case No. CR–54250, count 3). Lodgment No. 3. As part of the plea bargain, the court dismissed all of the remaining counts in both cases. *Id.* The court then sentenced the petitioner to three years on the robbery (base) count and to two years on the evading a peace officer count, to run concurrently, for a total sentence of three years. Lodgment Nos. 3, 4. The petitioner did not appeal his conviction.

However, on August 15, 1994, the petitioner's father filed a habeas corpus petition in the California Court of Appeal claiming that petitioner's defense counsel "settled without proper investigation of the D.A.['s] witnesses[.] Witnesses were available that would verify the information on the Police Report was falsified[.] My son's inability to withstand the pressure of both attorneys." Lodgment No. 7. On August 23, 1994, the California Court of Appeal denied the habeas corpus petition with a citation to *In re Harrell,* 2 Cal.3d 675, 689, 87 Cal.Rptr. 504, 470 P.2d 640 (1970).[2] Lodgment No. 8. On August 31, 1994, the petitioner's father filed a petition for review in the California Supreme

---

**1.** Anthony Hurlbert was the victim in counts 1 and 3. Lodgment No. 2.

**2.** *In re Harrell* holds that "[o]nly in exceptional circumstances will a 'next friend' application be entertained."

Court, attacking the denial of the Court of Appeal to consider his "next friend" habeas corpus petition. Lodgment No. 9 at 52–56. The petitioner's father also filed a petition for writ of habeas corpus in the California Supreme Court. Lodgment No. 9 at 57–64. The California Supreme Court denied both petitions on October 13, 1994. Lodgment No. 10.

On January 4, 1995, the petitioner filed his first federal habeas corpus petition, *Walters v. State of California, et al.*, Case no. CV–95–7426–GHK(RC), which was denied due to petitioner's failure to exhaust his state court remedies on all claims. Lodgment Nos. 11, 12.

On or about July 24, 1996, the petitioner filed a habeas corpus petition in the California Court of Appeal, which the court denied on August 20, 1996. Lodgment Nos. 15, 16. In his petition, petitioner raised the following claims: (1) the police report contained false information about statements by Kathy Christian Howard ("Howard") and Tron Keven Podgorski ("Podgorski"); (2) defense counsel was incompetent because (a) he neglected to investigate the contents of the police report, (b) he neglected to interview material witnesses, and (c) he neglected to examine other evidence prior to advising petitioner to accept the plea bargain; (3) the petitioner did not make an intelligent and voluntary guilty plea. Lodgment No. 15 at 16–19. The petitioner further characterized these claims as: (1) "Does the ... due process clause ... require that plea bargains ... be based on accurate and not perjured information?" and (2) "Does the 6th Amendment Right to Counsel require defense counsel to interview witnesses or otherwise investigate and inquire into the accuracy of the information upon which the plea bargain is based, prior to advising his/her client to accept the plea bargain in order to assist the defendant in making a voluntary and intelligent plea of guilt[y]?" *Id.* at 19.

On August 29, 1996, the petitioner filed a habeas corpus petition in the California Supreme Court. Lodgment No. 17. In the petition, petitioner raised the same claims he had raised before the California Court of Appeal. That petition was denied on November 26, 1996, with a citation to *In re Swain,* 34 Cal.2d 300, 304, 209 P.2d 793 (1949).[3] Lodgment No. 18. On December 20, 1996, the petitioner filed another, similar habeas corpus petition in the California Supreme Court. Lodgment No. 19. This second petition was denied on March 26, 1997, with citation to *In re Swain* and *In re Miller,* 17 Cal.2d 734, 735, 112 P.2d 10 (1941).[4] Lodgment No. 20.

**II**

On April 22, 1997, the petitioner filed the instant Petition for a Writ of Habeas Corpus, attacking his conviction on the following grounds: that his Sixth Amendment right to effective assistance of counsel and his Fourteenth Amendment rights to due process and equal protection of the laws were violated, as follows:

1. "[I]ncompetent [C]ounsel.... My counsel did not interview the two witnesses [Howard and Podgorski] that [sic] could exonerate me."

2. "[I]nability of victim [Hurlburt] to identify me in a lineup."

3. "[F]alsified police report.... Witnesses [Howard and Podgorski] gave statements stating that the[ir] statements in the final police report were not made by them."

4. "The plea bargain was not an intelligent waiver of my rights.... The D.A. and the police said that my witnesses [Howard and Podgorski] had made statements against me, but this was not true."

5. "The D.A. threatened to bring perjury charges against the witnesses [Howard and Podgorski who] requested to correct the falsified statements that were never made by them but was [sic] attributed to them by the

---

**3.** *In re Swain* holds that a petitioner must "allege with particularity the facts upon which he would have a final judgment overturned and that he fully disclose his reasons for delaying in the presentation of those facts."

**4.** *In re Miller* holds that a petition alleging the same grounds as a prior petition will be denied absent a "change in the facts or the law substantially affecting the rights of the petitioner."

final police report." Petition at 4. The respondents filed an answer on June 27, 1997, and the petitioner filed a traverse on July 22, 1997.

On August 12, 1997, the Court ordered the petitioner to amend his petition, which named only the People of the State of California and the California Attorney General as respondents, to name the proper respondents, such as the director of the California Department of Corrections. On September 2, 1997, the petitioner filed an amended petition; however the amended petition did not name any new respondents. However, in the memorandum attached to the amended petition, petitioner noted that he is currently on parole and identified his parole agent, Fran Popadok, and the director of the California Youth and Adult Correction Department, Thomas M. Maddock. Amended Petition at 12A. The respondents did not file an answer to the amended petition, but the Court hereby considers their previous answer as the answer to the amended petition. On September 30, 1997, the petitioner filed an amended traverse.

## DISCUSSION

### III

The respondents initially contend that the Court lacks jurisdiction because the petitioner has named as respondents in the amended petition only the People of the State of California and the Attorney General of the State of California. Answer at 15 n. 2. The respondents position has some merit; however, the Court, liberally construing the amended petition, finds it does have jurisdiction to consider its merits.

Generally, "[f]ailure to name the petitioner's custodian as a respondent deprives federal courts of personal jurisdiction." *Stanley v. California Supreme Court,* 21 F.3d 359, 360 (9th Cir.1994). However, if a habeas corpus applicant "is not presently in custody pursuant to the state judgment against which he seeks relief but may be subject to such custody in the future, . . . the officer having present custody . . . and the attorney general of the state in which the judgment which he seeks to attack was en-

tered shall be named as respondents." 28 U.S.C. foll. § 2254, Rule 2(b). As the Advisory Committee Notes to the 1976 Adoption explain: If an applicant is on parole "due to the state judgment he is attacking[, t]he named respondents shall be the particular . . . parole officer responsible for supervising the [applicant], and the official in charge of the parole . . . agency, or the state correctional agency, as appropriate." However, the Advisory Committee Notes also explain that "the judge may require or allow the petitioner to join an additional or different party as a respondent if to do so would serve the ends of justice."

Although petitioner has failed to name his parole officer and the person in charge of the parole agency in the caption of his amended petition, as required by Fed.R.Civ.P. 10, he has named the California Attorney General in the caption, and the parole officer and person in charge of the parole agency are named in the memorandum attached to the amended petition. Since the relief sought by petitioner, who is on parole, is not to be released from present custody "but rather for a declaration that the judgment being attacked is invalid[,] . . . it is appropriate [to name as respondent the attorney general of the state] because no one will have custody of the petitioner in the state of the judgment being attacked, and the habeas corpus action will usually be defended by the attorney general." Advisory Committee Notes to the 1976 Adoption. Thus, the Court is not deprived of jurisdiction because the petitioner has named only the attorney general as the respondent. *See, e.g., Barry v. Bergen County Probation Department,* 128 F.3d 152, 162–163 (3d Cir.1997) (A federal district court may exercise jurisdiction over a habeas corpus petition naming the attorney general for the state filed by a former state prisoner subject only to a community service obligation).

Moreover, the Court must liberally construe a pro se litigant's habeas corpus petition in regard to naming the proper respondent. *Belgarde v. Montana,* 123 F.3d 1210, 1213 (9th Cir.1997). Here, the naming of the California Attorney General as respondent in the amended petition, and the identifying of

petitioner's parole agent and the director of the California Youth and Adult Correction Department in the memorandum attached to the amended petition, are sufficient to show jurisdiction.

## IV

Because the petitioner filed his petition for writ of habeas corpus after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA),[5] his claims must be considered in light of the AEDPA. The AEDPA "worked substantial changes to the law of habeas corpus." *Moore v. Calderon*, 108 F.3d 261, 263 (9th Cir.), *cert. denied*, —— U.S. ——, 117 S.Ct. 2497, 138 L.Ed.2d 1003 (1997). Of specific importance to the petitioner's claims are the revisions made to 28 U.S.C. § 2254(d), which now provides that:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—[¶] (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or [¶] (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Further, under the AEDPA, a federal court shall presume that the determination of factual issues made by a state court is correct, and the petitioner has the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## V

The most significant of petitioner's claims is that his Sixth and Fourteenth Amendment[6] rights were violated in that his plea

bargain "was not an intelligent waiver of [his] rights." (Claim 4). This claim and three of his other claims revolve around his contention that two witnesses, Howard and Podgorski, recanted or never made statements attributed to them in the police report implicating the petitioner in Case no. CR–54250 (claims 1, 3, 5), and that the victim, Hurlburt, did not identify him in a lineup. (claim 2).

 A guilty plea must be voluntary and intelligent, and entered into with a sufficient awareness of the relevant circumstances and likely consequences resulting from a waiver of certain fundamental rights. *Brady v. United States*, 397 U.S. 742, 748, 90 S.Ct. 1463, 1469, 25 L.Ed.2d 747 (1970); *Boykin v. Alabama*, 395 U.S. 238, 242, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274 (1969). "The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill v. Lockhart*, 474 U.S. 52, 56, 106 S.Ct. 366, 369, 88 L.Ed.2d 203 (1985) (*quoting North Carolina v. Alford*, 400 U.S. 25, 31, 91 S.Ct. 160, 164, 27 L.Ed.2d 162 (1970)). "Where ... a defendant is represented by counsel during the plea process and enters his guilty plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was 'within the range of competence demanded of attorneys in criminal cases.'" *Hill v. Lockhart*, 474 U.S. at 56, 106 S.Ct. at 369.

 Under California law,[7] a court must establish the factual basis for a guilty plea by asking the defendant on the record if his guilty plea is based on the fact that he is actually guilty of the charges against him or asking him specific questions regarding the charges. *People v. Wilkerson*, 6 Cal.App.4th 1571, 1576, 8 Cal.Rptr.2d 392, 395 (1992). Here, the court records show that a factual

---

**5.** Pub.L. No. 104–132, 110 Stat. 1214.

**6.** Although the petitioner contends in general that his equal protection rights were violated, he has failed to state an equal protection claim. *See Fraley v. United States Bureau of Prisons*, 1 F.3d 924, 926 (9th Cir.1993) (holding that petitioner

must allege differential treatment from those similarly situated to state an equal protection claim).

**7.** *See* Penal Code § 1192.5 (1994).

basis was taken for both pleas.[8] Lodgment No. 3. Therefore, the petitioner necessarily admitted to the court, in the course of pleading guilty to both counts, that he was actually guilty of both crimes. Even now, the petitioner does not claim that he is not guilty in either his original or amended petition or traverse, although he does deny committing the crimes in what purports to be his "declaration," which he submitted along with his original traverse; however, the purported declaration does not comply with 28 U.S.C. § 1746. *See* Traverse, Exh. F at 1.

Further, the petitioner does not assert that he was not informed of, or did not waive, his constitutional rights before pleading guilty. Rather, he claims only that his guilty pleas were not intelligent waivers of his rights because the "D.A. and police said that witnesses [Howard and Podgorski] had made statements against [him implicating him in the robbery], but this was not true." However, the record does not support petitioner's claims. By the time petitioner pleaded guilty, he was aware of Podgorski's recantation of the statement against petitioner. As set forth in the declaration of petitioner's trial attorney, David Phillips:

> In case number CR–54250, the evidence concerning [the petitioner] consisted largely of statements by Tron Podgorski and Kathy Howard to the investigating officer(s). The respective statements of Tron Podgorski and Kathy Howard clearly implicated the [petitioner]. On May 9, 1994[,] prior to the scheduled preliminary hearing, Deputy District Attorney Arthur Chang and his investigator interviewed Tron Podgorski. [¶] According to Mr. Chang, Tron Podgorski gave a statement consistent with the statement attributed to him in the police report. [¶] The preliminary hearing was continued to May 18, 1994. Prior to the scheduled preliminary hearing on May 18, 1994[,] I interviewed Tron Podgorski in a room in the courthouse; Also [sic] present was Arthur Chang; during the interview Tron Podgorski repudiated the statement attributed to him in the police report and repeated to

> Arthur Chang and the District Attorney investigator on May 9, 1994. **I communicated this to the [petitioner] and his father. Mr. Chang thereafter offered 3 years state prison to settle both cases. I advised the [petitioner's] father of the offer and I advised the [petitioner] the offer was a 'package', [sic] meaning both defendants had to accept the offer or the case would proceed to preliminary hearing**....[¶] The [petitioner] accepted the proposal (1) because the co-defendant would lose "his" offer of probation if the case were to proceed further and (2) Because [sic] the **three year offer was extremely lenient considering the potential consequences to the [petitioner] if convicted in CR–54250. I specifically discussed the penalties for the various offenses with the [petitioner] prior to the entry of his guilty plea.**

Lodgment No. 23 at 148–49 (emphasis added). Although the petitioner contends that Phillips did not tell him about Podgorski's recantation, the petitioner's bare self-serving statement is not credible in light of the nature of the plea bargain entered into by petitioner; specifically, the prosecutor dropped numerous other serious charges, with sentences totaling six years, in return for petitioner's guilty plea and petitioner was sentenced only to two concurrent, rather than consecutive, years on the evading a peace officer count, which has a maximum sentence of three years. *See* V.C. § 2800.2, P.C. § 18 (1994).

Additionally, courts have found time and again that recanted statements or testimony is inherently unreliable. *See Dobbert v. Wainwright,* 468 U.S. 1231, 1233, 105 S.Ct. 34, 36, 82 L.Ed.2d 925 (1984) (Brennan, J., dissenting from denial of cert.) ("Recantation testimony is properly viewed with great suspicion."); *Carriger v. Stewart,* 132 F.3d 463, 483 (9th Cir.1997) (Kozinski, J., dissenting) ("Appellate courts ... look upon recantations with extreme suspicion."); *In re Weber,* 11 Cal.3d 703, 724, 114 Cal.Rptr. 429, 443, 523 P.2d 229 (1974) (en banc) ("The offer of a

---

**8.** Because the petitioner did not appeal his conviction, there is no Reporter's Transcript of the plea hearing. However, there are documents from the Riverside County Superior Court which describe the plea proceeding. *See* Lodgment No. 3.

witness, after the trial, to recant his sworn testimony is always looked upon with suspicion.").

Finally, the Court notes that the petitioner did not appeal his conviction. Under California law, a defendant may appeal a conviction based on a guilty plea when "(a) The defendant has filed with the trial court a written statement, executed under oath or penalty of perjury showing reasonable constitutional, jurisdictional, or other grounds going to the legality of the proceedings [and] (b) The trial court has executed and filed a certificate of probable cause for such appeal with the county clerk." P.C. § 1237.5 (1994). A court may also permit a defendant to withdraw his plea for a showing of good cause prior to entering judgment. P.C. § 1018 (1994). However, petitioner attempted to comply with neither statutory provision— casting further doubt on his credibility and claims. For the foregoing reasons, the guilty plea was voluntarily given and the California Supreme Court's denial of this claim is neither contrary to, nor an unreasonable application, of federal law.

## VI

To establish a prima facie claim of ineffective assistance of counsel, a petitioner must demonstrate that trial counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *James v. Borg,* 24 F.3d 20, 26 (9th Cir.), *cert. denied,* 513 U.S. 935, 115 S.Ct. 333, 130 L.Ed.2d 291 (1994). The petitioner bears the burden of establishing both components. *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064; *United States v. Quintero–Barraza,* 78 F.3d 1344, 1348 (9th Cir.1995). The Supreme Court has held that, with minor modifications, "the two-part Strickland [] test applies to challenges to guilty pleas based on ineffective assistance of counsel." *Hill v. Lockhart,* 474 U.S. at 58, 106 S.Ct. at 370.

The first requirement in the guilty plea context is whether counsel provided "reasonably competent advice." *Hill v. Lockhart,* 474 U.S. at 58–59, 106 S.Ct. at 370; *McMann v. Richardson,* 397 U.S. 759, 770, 90 S.Ct.

1441, 1448, 25 L.Ed.2d 763 (1970). The second requirement "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill v. Lockhart,* 474 U.S. at 58–59, 106 S.Ct. at 370. In other words, a defendant who pleads guilty "received ineffective assistance of counsel if his counsel's performance fell below an objective standard of reasonableness, and there was a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and instead would have insisted on going to trial." *Langford v. Day,* 110 F.3d 1380, 1386 (9th Cir. 1996), *cert. denied,* —— U.S. ——, 118 S.Ct. 208, 139 L.Ed.2d 144 (1997).

Here, the petitioner's claim is that his trial attorney was incompetent because he did not interview Howard and Podgorski, who supposedly could exonerate him. There is no merit to this claim. First, whether his attorney interviewed Howard and Podgorski was irrelevant to petitioner's decision to plead guilty since, as discussed above, petitioner was well aware of Podgorski's recantation **before** he decided to accept the plea offer. Since Podgorski's recantation did not affect petitioner's counsel's advice, or petitioner's decision, it is unlikely that Howard's would have either. Second, petitioner does not, and cannot, contend that his attorney's advice was otherwise unreasonable or misled him to plead guilty instead of proceeding to trial. It is clear that the plea bargain was of great benefit to petitioner in Case No. 53580, which Howard's and Podgorski's statements or recantations had nothing to do with. In Case No. CR–53580, petitioner was allowed to plead guilty to count 1, and to receive a "concurrent" sentence of only two years on that count, and the other charges were dropped as part of the plea bargain. Without the plea bargain, the petitioner faced penalties of three years imprisonment on each of counts 1 and 2, see V.C. § 2800.2, P.C. § 12020(a), P.C. § 18 (1994), and further, could have had his sentences run consecutively to one another. *See* P.C. § 669 (1994).

For the foregoing reasons, there is no merit to petitioner's ineffective assistance of counsel claims and the California Supreme

Court's denial of these claims is neither contrary to, nor an unreasonable application of, federal law.

## VII

One who voluntarily and intelligently pleads guilty to a criminal charge subsequently may not challenge pre-plea constitutional violations in federal habeas corpus proceedings. *Haring v. Prosise,* 462 U.S. 306, 319–20, 103 S.Ct. 2368, 2376, 76 L.Ed.2d 595 (1983); *Tollett v. Henderson,* 411 U.S. 258, 267, 93 S.Ct. 1602, 1608, 36 L.Ed.2d 235 (1973); *Hudson v. Moran,* 760 F.2d 1027, 1029–30 (9th Cir.), *cert. denied,* 474 U.S. 981, 106 S.Ct. 387, 88 L.Ed.2d 339 (1985). This general rule, known as the "Brady doctrine," was set forth by the United States Supreme Court in the 1970 trilogy of *Brady v. United States,* 397 U.S. at 750, 90 S.Ct. at 1471; *McMann v. Richardson,* 397 U.S. at 770, 90 S.Ct. at 1448; and *Parker v. North Carolina,* 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785 (1970). The principle behind the Brady doctrine is best stated as follows:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea.

*Tollett,* 411 U.S. at 267, 93 S.Ct. at 1608.

There is, however, a narrow jurisdictional exception to the Brady doctrine. That is, a guilty plea does not waive a claim that the charge is one which the government may not constitutionally prosecute. *Menna v. New York,* 423 U.S. 61, 62, 96 S.Ct. 241, 242, 46 L.Ed.2d 195 (1975); *Blackledge v. Perry,* 417 U.S. 21, 30, 94 S.Ct. 2098, 2103–04, 40 L.Ed.2d 628 (1974); *United States v. Cortez,* 973 F.2d 764, 766–67, (9th Cir.1992). This "exception is derived from the fact that even through the guilty plea removes the question of the defendant's guilty from the case, the issue of whether the government had the power to bring the charges at all still remains." *Cortez,* 973 F.2d at 767.

Here, the petitioner makes three claims of pre-plea constitutional violations based on: 1) Hurlbert's inability to identify him in a lineup (claim 2); 2) false statements in the police report (claim 3); and 3) the D.A.'s threat to bring perjury charges against Howard and Podgorski (claim 5). None of these claims comes within the narrow jurisdictional exception because they do not relate to the government's power to bring the charges. *United States v. Broce,* 488 U.S. 563, 569, 109 S.Ct. 757, 762, 102 L.Ed.2d 927 (1989); *Cortez,* 973 F.2d at 767. Because the petitioner's three claims of pre-plea violations are foreclosed by the Brady doctrine, these claims cannot be raised in a habeas corpus proceeding and the California Superior Court's denial of these claims is neither contrary to, nor an unreasonable application of, federal law.

## RECOMMENDATION

IT IS RECOMMENDED that the Court issue an Order: (1) approving and adopting this Report and Recommendation; (2) adopting the Report and Recommendation as the findings of fact and conclusions of law herein; and (3) directing that Judgment be entered denying the petition and dismissing the action with prejudice.

Feb. 19, 1998.